ROBERT WHITACRE, Respondent, *vs.* GEORGE CULVER, Appellant.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

C. gave his promissory note to F. F, after the note matured, and after it had been paid in full, transferred it, with other notes, to W. as collateral security for money borrowed, and then informed C. of what he had done, but desired him not to let W. know that the note had been paid, and he would take it up in a short time. W. afterwards notified C. that the note was in his possession, and that payment must be made to him alone. C. then stated to W. that a particular sum, or thereabouts, had been paid on the note, but did not inform him that it had been paid in full. W. kept the note in his possession for some two years or more. He then settled with F. for the loan, taking a new note for the balance still due, and retaining the same collaterals. He subsequently informed C. that he still had his note. *Held*, that, in an action by W. to recover on the note given by C., C. was not estopped from proving that it had been paid in full at the time it was transferred to the Plaintiff.

This action was tried before W. Wilkin, Esq., special referee, who reported in favor of the Plaintiff. The Defendant moved to set aside the report, and for a new trial, which motion was denied by the Court below. The Defendant appeals.

The facts found are fully stated in the opinion of the Court.

Points and Authorities of Appellant.

I.—The note of the Defendant being taken by the Plaintiff after due, was subject to the defence of the Defendant in his hands, which was fully made out. *Johnson vs. Bloodgood*, 2 *Caine's Cases*, 303; *Paine vs. Cutter*, 13 *Wend.*, 605; *Williams vs. Matthews*, 3 *Cow.*, 252; *Edwards on Bills*, 259–60; *Manhattan vs. Reynolds*, 2 *Hill.*, 140; *De Mott vs. Starkie*, 3 *Barb. Ch.*, 403.

II.—The admissions of the Defendant did not amount to an estoppel.

In that they were made after the Plaintiff's title had passed and the note was not taken on the faith of such admissions and the Plaintiff was not prejudiced thereby ; and in that the Plaintiff's conduct is not shown to have been in any way influenced by them and they had no direct connection with the

vol vi.—38

action of the Plaintiff; and in that they were indefinite and not inconsistent with his defence, and in other respects do not furnish the elements of an estoppel. *Dezell vs. Odell*, 3 *Hill*., 222; 2 *Smith's Leading Cases, Am. Ed.*, 561–2–3–4, and authorities cited; *Reynolds vs. Lounsberry*, 6 *Hill*, 534; *Rogers vs. Farwell*, 9 *Barb.*, 615; *De Mott vs. Starkey*, 3 *Barb.*, 406; *Watkins vs. Peck*, 13 *N. H.*, 360; *Sargent vs. Sargent*, 18 *Vt.*, 371.

III.—The estoppel to be binding should be mutual. *Co. Litt.*, 352, *a*; *Lansing vs. Montgomery*, 2 *Johns*, 383.

IV.—A party relying upon an estoppel must plead it if he have opportunity, and if he pleads it must be confined to the estoppel he has pleaded. *Lansing vs. Montgomery*, 2 *Johns.*, 383; *Gould vs. Richardson*, 6 *Pick*, 364; *Sawyer vs. Hoyt*, 2 *Tyler*, 288; *Isaacs vs. Clark*, 12 *Vt.*, 692; *Woodhouse vs. Williams*, 3 *Dev.*, 508; *Davis vs. Thomas*, 5 *Leigh.*, 1; *Bunsmail vs. Mayo*, 9 *Vt.*, 31.

V.—The report of the referee was against the evidence as to the question of estoppel and the facts connected therewith, and the conclusions of law reported by him.

Points and Authorities of Respondent.

The question is, whether upon the facts the Defendant is liable to the Plaintiff upon this note as found by the referee. We confess we do not see any room for argument. The Defendant, at the request and to accommodate Fridley, represented to the Plaintiff that he was liable upon the note, with a full knowledge that he was not so liable, unless he chose to make himself so, and the Plaintiff, relying upon these representations, renewed his note against Fridley, extending the time of payment one year upon the strength of Defendant's note, which he was to retain as collateral security for the new note. Most certainly under these circumstances the Defendant is now estopped from denying his liability upon the note to the Plaintiff. Lord Denman's definition of an estoppel as laid down in the Dutchess of Kingston case, referred to and approved by this Court in *Caldwell vs. Auger & Herbert*, 4 *Minn. R.*, 217, is conclusive upon the subject.

The referee finds as a fact that the Plaintiff frequently spoke to the Defendant about the matter, both before and after the settlement of October, 1857, when the old note was given up, and that the Defendant always left him in the belief that there was no defence to the note except the sum of $450. Also, that the Plaintiff was misled, and relying upon the misrepresentations was induced to make the settlement of October, 1857, by which the old note was given up and a new one taken, payable at a future time.

That Fridley became insolvent sometime in 1857. The settlement was made and new note given in October, 1857, which would probably be just about the time of Fridley's transition from solvency to insolvency. The matter stands thus. The Plaintiff having taken the Defendant's note as collateral, informed him of the fact, and frequently spoke to him about it, and the Defendant always gave him to understand it was all right. The Plaintiff relying upon the representations of Defendant as to his liability upon the note, makes a settlement with Fridley, whereby he gives up the original note and takes a new one payable at a future day, under an agreement that the Defendant's note should be held as collateral for the new note. The Defendant is again informed of this transaction, and again responds that it is all right. If this will not estop him from now denying his liability upon the note, there is no use for the law of estoppels.

HORN & GALUSHA, Counsel for Appellant.

SMITH & GILMAN, Counsel for Respondent.

*By the Court*—EMMETT, C. J.—On the 26th of July, 1855, one Fridley borrowed money of the Plaintiff, and as collateral security for the payment of the loan, transferred to him the note on which this action is brought. At the time of the transfer the note was overdue, and had in fact been paid. Fridley afterwards informed the Defendant of the transaction, but desired that he would not inform the Plaintiff that there was nothing due on the note. Afterwards the Plaintiff notified the Defendant that said note was in his possession, and

that all payments thereon must be made to him; and Defendant then stated " that $450 or thereabouts had been paid on the note," but said nothing about any other payments or offsets.  The note remained with the Plaintiff until October, 1857, when he settled with Fridley for the money loaned, and took from him a new note for the balance found due, retaining by agreement the same collaterals.  After this settlement the Plaintiff again notified the Defendant that he still held his note as collateral security, but Defendant did not then, nor did he ever, though having frequent conversations with him, both before and after this settlement, inform the Plaintiff or claim to him, that he had any defence or offset to the note, or that any portion thereof had been paid, except about four hundred and fifty dollars.

Fridley failed to repay the loan, and the Plaintiff brought this action, setting up the loan, the failure of Fridley to pay, the taking of the Defendant's note as collateral security, and the admission of the Defendant that it was wholly unpaid, except the sum of $450.  The Defendant denies the admission and alleges payment of the note in full, before the transfer to the Plaintiff.  The reply takes issue on the payment; and the cause was argued principally upon the question, whether upon the facts before recited, (which fully appear in the record,) the Defendant is estopped from proving payment according to the allegations of the answer.

The general doctrine to be gathered from the authorities seems to be, that a party is not estopped from proving facts inconsistent with his statements or admissions unless the statement or admission was fraudulent in its purpose, or unjust in its results.  It must not only have been made with the intention of misleading, but must actually have misled the other party to his prejudice.  And where admissions alone are relied upon, the estoppel is always limited to what may be necessary to put the parties in the same relative position, which they would have occupied, had the admission not been made.  Nor will statements or admissions made in one transaction, preclude the party from retracting them in another. 2 *Smith's Leading Cases*, 561-2-3-4; 3 *Hill.*, 219; 4 *Min.*, 217; 5 *Id.*, —; 6 *Hill.*, 534; 18 *Vt.*, 371.

Let us inquire whether the present case falls sufficiently within these propositions. And first what admissions did the Defendant make? There is no evidence of any admission of indebtedness on the note in any sum whatever, except what may be implied from his statement to the Plaintiff "that the sum of $450 or thereabouts had been paid," without however then, or at any other time, informing him that it had in fact been paid in full. The statement was literally true, but it did not contain the whole truth. Was the statement fraudulent in its purpose? The referee finds that it was made to induce the Plaintiff to believe that the note was valid, and pursuant to an arrangement between the Defendant and Fridley; but it is proper to remark that the only evidence of any arrangement was that Fridley, after he had transferred the note, requested the Defendant not to tell the Plaintiff that there was nothing due on it. But did the statement mislead the Plaintiff to his prejudice, or place him in any different relative position than that which he occupied before the statement was made? When the statement was made the Defendant was not liable, because he had paid the note in full, and the Plaintiff having taken it after it became due, took it subject to every defence that could have been made as against Fridley. Let us suppose that the Defendant then admitted his liability in terms, and to the full extent of the note; and that the Plaintiff had immediately brought his action to recover the amount admitted to be due. Would there have been any injustice in permitting the Defendant to prove that he had paid the note, notwithstanding these admissions? The Plaintiff had not been induced to take the note by reason of anything which the Defendant had said or done; and he had no claim against the Defendant at the time the admissions were made. His relations to Fridley were not at that time changed. He had then parted with nothing, lost no right, nor suffered prejudice in any manner. Surely there would be no equity in making the Defendant pay a debt he did not owe, merely because he had, contrary to the truth, admitted his indebtedness. Had he made the admissions to Fridley, he would not have been concluded by them. Why then should he be deprived of a retraction, when the admissions are made

to a party who simply succeeds to Fridley's rights.  I think we may fairly conclude therefore, that had the Plaintiff sued immediately after the admission was made, the Defendant would not have been estopped from proving payment, even although he had in express terms admitted that nothing whatever had been paid ; because the Plaintiff had not as yet been misled to his prejudice,—unless it might be said that he had been induced to incur the expense of bringing an action, and was thereby prejudiced. But that trifling prejudice gives him no equitable claim beyond the actual expense incurred, and it must not be forgotten that the doctrine of estoppel invoked in this case, rests on equitable grounds entirely ; and the Defendant would be permitted to prove payment in mitigation of damages, though, possibly, not in bar of the action.  15 *Pick.*, 32.

If then the Plaintiff could not have recovered on the note immediately after the admission was made, at what time thereafter did the right accrue, and by what means was it acquired ?  Something must have been done to confer the right, for it cannot be that the mere neglect to sue can put the Plaintiff in any better condition than he was before ; because it would then be in his power, by delay merely, to create in himself a right which did not previously exist.

But, it is argued, the Plaintiff retained the note on the faith of Defendant's admission, until Fridley became insolvent, whereas had he been fully informed of all the facts, he would have returned it at once, and obtained other security by which his loan might have been saved. A sufficient answer to this position is found in the fact that there is not a particle of evidence to that effect; nor does the referee so find.   The Plaintiff who was the only witness in his own behalf does not state that he retained the note any length of time by reason of Defendant's admission ; nor that he was misled by it to his prejudice in any particular ; nor even that he was led to believe that only $450 had been paid ;—and certainly some fact of this nature should have been proved if he expected to derive any benefit from the fact of having kept the note.   He should have shown that the admission of the Defendant had a direct and immediate influence upon his conduct.   13 *N. H.*, 360.

The referee however finds that the Plaintiff was misled, by the statements of the Defendant, and relying upon these statements had made the settlement of October 22, 1857, and renewed the note of Fridley.    But let us see how he was misled, or how his conduct was affected, and whether it was to his prejudice.    It is evident from the referee's findings in this particular, that the Plaintiff was prejudiced, if at all, by giving time to Fridley upon the settlement.    The finding is in substance that the Defendant, in July, 1855, stated to the Plaintiff that about $450 had been paid on the note ; that he knew at the time that nothing was due thereon ; that he did not then, or ever inform the Plaintiff or claim to him that anything more had been paid, although he had conversations with him both before and after the settlement of October 22, 1857 ; that he made the statements to induce the Plaintiff to believe that the note was valid ; that the Plaintiff was misled by them, and relying upon them, had made said settlement ; and that Fridley became insolvent in 1857, but whether before or after the settlement is not found.

It does not appear that the statement about the payment was ever repeated after the first interview, and it was then made in reference to a certain state of facts known to the Defendant.    More than two years afterwards the Plaintiff, without consultation with Defendant, or intimating to him his intentions, enters into a new arrangement with Fridley, by which it is claimed their relations to each other are entirely changed, and it is now urged that the Plaintiff was led into making this new arrangement by this statement, and that he is prejudiced thereby.    We do not think he can avail himself of an admission made under such circumstances and after such a lapse of time, however full and explicit it may have been.    We are by no means satisfied that the settlement of the Plaintiff with Fridley materially changed their relations to each other.    The debt and securities remained as before. The change was merely as to the instrument by which the debt was evidenced.    When the new note matured, the Plaintiff might have disregarded it and brought his action upon the original consideration or loan ; and although the new note suspended the right of action during the time it was

maturing, yet it is not at all probable that this extension or time was given in consideration of the Plaintiff being permitted to retain the collaterals, for he already had these in his possession, and was authorized to proceed to collect them at any moment; on the contrary we are satisfied from the terms of the new note, and general nature of the transaction, that the extension was solely in consideration of the increased rate of interest which the Plaintiff was thereafter to receive.

But admitting that the settlement with Fridley was a new transaction, entirely changing the relation which the parties thereto previously held to each other, the Plaintiff is even worse off than before; for all admissions are confined to the transaction in which they are made, and are not conclusive or binding on the party in any other, unless made anew and with a full knowledge of the facts. 13 *N. H.*, 360; 18 *Vt.*, 371; 6 *Hill.*, 534. It follows therefore that had the Defendant's admissions been of such a nature as to cut him off from the power of retraction, up to the time when the settlement was made, they would not be binding after that, because they were made in another transaction. We have however endeavored to show that the admission was not conclusive at the time it was made; that the Plaintiff did not acquire any right of action by merely retaining the note in his possession and forbearing to sue upon it, especially as he did not show that he was thereby prejudiced, nor that his conduct in that regard was directly and immediately influenced by Defendant's admission; and if the Defendant had a complete defence up to the time of the settlement with Fridley, it was not in the power of the Plaintiff to deprive him of that defence, by entering into a new arrangement with Fridley, without the knowledge or consent of the Defendant. Instead of advising the Defendant of his intended settlement, the Plaintiff acted, as he did in the first instance, upon his own responsibility entirely, and we think that he is in the same relative position with regard to the Defendant, since the admission, that he would have occupied had the admission not been made. He had no claim upon the Defendant then, and we do not see that he has any claim now. It does not appear that he has lost any right as against the Defendant, or Fridley,

that can be traced to the Defendant. He only fails to acquire a right that he did not obtain by his contract. He has done or suffered nothing entitling him to the money of the Defendant, nor has the Defendant said or done anything for which he should be made to pay money that he does not owe.

Judgment reversed.