CHRISTOPHER CARLI

*vs.*

THE STILLWATER & SAINT PAUL RAILROAD COMPANY.

When lands are taken for a railroad under *chap*. 34, *title* 1, *of the General Statutes*, the title to the lands taken does not vest in the railroad company until the time for an appeal from the award of

Carli v. The Stillwater & St. Paul Railroad Company.

commissioners has expired without such appeal, but remains in the original owner; and a quitclaim deed of the premises executed by such owner to a third person after the award of commissioners is filed, and within the time allowed for an appeal, conveys the premises to such third person; and the right to the damages passes to him as incident to his ownership, and he may take an appeal from the award of commissioners within the time allowed by the statute.

When lands are taken for a railroad under *chap*. 34, *title* 1, *Gen. Stat.*, in estimating the damages to the owner of the land, the value of the land at the time it is taken must be determined irrespective of any general benefits resulting to the land from the construction of the proposed road.

On the trial of an appeal from the award of commissioners to assess damages for land taken for a railroad under *chap*. 34, *title* 1,. *Gen, Stat.*, it is error to ask a witness to "state what, if anything, less the property was worth at the time of the award, with the road located over it as appears on the map, than it would be worth with the road running *near* the property, but not upon it," because it suggests the wrong rule of damages.

On such a trial, it is error for the court to instruct the jury as follows: "The jury must estimate the value of the land taken upon the hypothesis that the railroad is located near, and not upon, the property."

*The Winona & St Peter R. R. Co. vs. Denman*, 10 *Minn*. 267; and *The Same vs. Waldron et al.*, 11 *Minn*. 515, explained and approved.

The plaintiff in this case appealed from an award of commissioners assessing the damages for land taken by defendant for its road. The appeal was tried before a jury, and resulted in a verdict for plaintiff, giving him a much larger sum than the award as damages. The defendant made a motion for a new trial, which was granted; and the plaintiff appeals from the order granting the same, to this court. The case, in regard to the questions decided on the appeal, is fully stated in the opinion of the court.

Brisbin & Palmer for Appellant.

H. R. Murdock for Respondent.

*By the Court*—McMILLAN, J.—An award was made by commissioners appointed, on the application of the Stillwater & Saint Paul Railroad Company, to assess the damages to certain lands taken by the railroad company for the purposes of its road.

Carli appealed from the award of the commissioners to the district court; the appeal was tried by jury, and resulted in a verdict in favor of Carli for $7,413.80. On motion of the respondent—no person appearing for the appellant at the hearing—a new trial was granted by the district court, and from the order granting a new trial, Carli took an appeal to this court. The grounds of the motion for a new trial are not stated in the paper book; but from the points made in the argument of the appellant's counsel, and the statements and points made in the arguments of the respondent's counsel, we find the substantive grounds of the motion were: 1. Excessive damages. 2. Because the verdict was against evidence. 3. Errors in law occurring at the trial.

We will dispose of these questions in the inverse order of their statement; and in view of the conclusions we have arrived at, it will be necessary for us to consider, at length, only the points presented under the third ground enumerated; to wit: Errors in law occurring at the trial.

Upon the trial of the cause the appellant offered in evidence a quitclaim deed in the usual form from Frederick Schulenberg and wife to himself, executed and acknowledged on the 20th day of December, 1869, conveying and quitclaiming all the right, title and interest of the grantors in and to certain premises through which the railroad of respondent passes, and a portion of which is taken for the purposes of said road. The respondent objected to the admission of the deed, because the same is immaterial,

Carli v. The Stillwater & St Paul Railroad Company.

being executed and delivered subsequent to the condemnation of the property, and the filing of the report and award of the commissioners.   This being the only objection made, so far as the paper book shows, we confine our attention to it.

The paper book gives us no information as to the authority by which the railroad company is incorporated; but from a reference in appellant's brief to *chapter* 34 *of the General Statutes*, we infer that the company was incorporated under *title* 1 *of that chapter*, and that the provisions of that chapter are to govern us so far as they are applicable to the questions arising in this case.   The award of the commissioners, as we learn from the notice of the appeal therefrom, was filed on the 10th day of November, 1869. The appeal was taken from the award of the commissioners on the 20th day of December, 1869, the day of the execution of the quitclaim deed offered in evidence   We presume, in the absence of any objection, that the appeal was taken within the proper time.   The only question necessary to be determined, is whether the deed vested in Carli any title or interest in the property, which entitled him to take the appeal from the award of the commissioners.   At the time of the award of the commissioners, and until the execution of the deed, Schulenberg and wife, we must presume, were the owners in fee of the premises; by the execution of the deed they conveyed all their interest in the premises to Carli.

If the proceedings to condemn the property were completed, and the company acquired title to the easement, or right of way over the *locus in quo*, before the execution of the deed, Carli would take the premises subject to the right of the company, and the damages would enure to the owner of the land at the time the right vested in the company;

but if the proceedings were not completed, but inchoate, and the company did not acquire a title to the easement prior to the execution of the deed, the premises passed to Carli, and he became the owner, and the right to damages was in him as incident to the ownership.

The mode of proceeding by which the company could acquire their rights in the premises is fully prescribed in *title* 1, *of chapter* 34 *of the General Statutes, secs.* 13–27.

By *sec.* 21 it is provided that upon the filing of the report of the commissioners, the petitioners or any officers of, or other persons duly appointed by, the corporation may make payment of the damages assessed to parties entitled to the same, in the manner specified in this section, and receipts for such payments filed in the office of the clerk shall estop the parties giving them, and their principals, when they act in a representative capacity, from all further claims or proceedings in the premises. *Section* 22 provides that an appeal may be taken and prosecuted by any person interested.

*Sec.* 26 is as follows: "Upon verdict or assessment, judgment shall be entered declaring that upon payment of the verdict or assessment, and costs, if any, the right to construct said canal line, railroad, or improvement  *  *  * and do the act in controversy in said appeal, and to take, use and appropriate any property in controversy on said appeal for the purposes aforesaid, shall, as against the parties interested in such verdict or assessment, be and remain in said corporation, their successors and assigns forever, and payments of such judgments may be made as payments of assessments by the commissioners are made as hereinbefore provided;" and *sec.* 27 provides that when valid appeals are taken from the report of the commissioners, the judgment of the court upon such appeal, after

the damages are paid, may be recorded in the office of the register of deeds where the said real estate or interest therein affected by said judgment, is situated, and such record shall be notice and evidence of title, &c.

It is apparent, we think, from these sections, that when an appeal is taken from the report of the commissioners, the title to the premises sought to be taken for the use of the road does not vest in the railroad company before judgment upon the verdict or assessment, and the conclusion is strengthened by a consideration of the other sections relating to this subject. It is not claimed that any payment was made by or on behalf of the company to Schulenberg under the provisions of *sec.* 21 referred to; the title to the premises remained therefore in the owner of the land during the time allowed for an appeal. Within this time, Schulenberg, the owner of the land, conveyed the premises to Carli, and the right to recover damages for the proposed taking of the premises for the use of the road passed to him as incident to the ownership of the land. The deed, therefore, was material to show his ownership, and was properly admitted in evidence. In view of this conclusion, we need not consider the questions raised as to the evidence of Carli's equitable estate in the premises at the time of the award.

Four witnesses were called by the appellant, who testified to the damages occasioned to the premises in question by the construction of the road, to each of which the appellant put the following question: "State what, if anything, less this property is worth at the time of the award, with the road located over it, as appears on the map, than it would be with the road running *near* the property, but not upon it," which in each instance was objected to by the respondent as immaterial, not suggesting the proper rule of

damages, and not confined to any particular description or parcels of property; the objections were overruled, and the respondent excepted.

The court also, in charging the jury, instructed them, at the request of the appellant, as follows: "The jury must estimate the value of the land taken, upon the hypothesis that the railroad is located near, and not upon, the property," to which the respondent excepted.

The statute governing the assessment of damages in this case, prescribes that the commissioners "shall determine and appraise to the owners of said land, property, easement or any other right proposed to be taken, the amount of damages arising to them respectively from the taking thereof, after making due allowance for any benefit that such owners may respectively derive from the * * * * railroad or improvement aforesaid." ( *Gen. Stat., chap.* 34, *title* 1, *sec.* 19.) And by *sec.* 25 *of the same chapter and title*, it is provided that "the rule for ascertaining and fixing such damages, shall be based upon the same principles that the commissioners are required to adopt in originally appraising and determining such damages."

There is nothing in the statute fixing the value of the land at any particular time as the standard of compensation, but as is said in *Winona & St. Peter R. R. vs. Denman et al.*, it would seem not to be unfair that the valuation should be made as at the time when it was passed upon by the commissioners. The taking the land for the road is the act complained of, and the first step in the process of taking is the assessment of the damages, and as the damages are to be determined by the commissioners, the value of the premises at that time may fairly be made the standard of compensation. That seems to have been the rule observed in this case, and we do not understand either party to raise any objection to it.

Carli v. The Stillwater & St. Paul Railroad Company.

The question to be determined by the jury, then, is—what injury to the premises of the plaintiff, as they are at the time of the taking them for the road, is caused by such taking? In order to arrive at a solution of this question, it is necessary to determine as a standard of compensation, the value of the premises at the time.

The questions put to the witnesses, and the instruction given by the court to the jury, are based upon the theory, that in determining the value of the land, the jury are to embrace in their estimate of its value, the general or indirect benefits which the construction of the road near the premises would confer upon the land in common with other lands in the vicinity   This, we think, is not correct.   The construction of this road through the plaintiff's premises is the act complained of   The law expressly recognizes the fact that this act may be both beneficial and injurious to the land owner, and allows the special or direct benefits to be deducted in favor of the company from the injury occasioned to the land.   The railroad company is chargeable only with the injury occasioned to the premises by the act of the company, and this act, in so far as it is beneficial to the land, could not be chargeable to the company as an injury; but such would be the result if the lands were enhanced in value by the construction of the road, and the land owner were permitted to include such enhancement in determining the value of the premises for the purpose of ascertaining his damages.

The true rule is, that the value of the land at the time it is taken, must be determined irrespective of any general benefits resulting to the land from the construction of the proposed road.

It is urged by the appellant, that the rule of damages suggested by the questions to the witnesses, and the charge

to the jury in this case, is established by this court in the *Winona & St. Peter R. R. Co. vs. Denman et al.*, 10 *Minn.* 267; and in *Winona & St. Peter R. R. Co. vs. Waldron et al.*, 11 *Ib.* 515. In the first case cited, it is determined that the value of the land, at the time of the assessment of the damages, is the standard of compensation.

In the *Winona & St. Peter R. R. Co. vs. Waldron*, the question was presented to this court, whether general benefits, as there defined, could be deducted from the respondent's damages. The court below charged the jury "that any general benefits arising from the construction or operation of the railroad, shared by the defendants in common with the whole country in this vicinity, and not peculiar to them, or to other lands actually crossed by the road, you will exclude, and not consider in ascertaining the damages; as for instance, such benefits as defendants would receive if the railroad should be constructed through the country, but not crossing this farm" The court also charged the jury that "if the farm would sell for as much as it now is, with the road constructed through it, *less the value* of the land actually taken, as it would bring if the road ran through the country, but not crossing this farm, then defendants have sustained no damage whatever. If it will not, then that reduction in the market value of the lands not taken, is the measure of defendant's damages." To these instructions to the jury the appellant excepted. An examination of the return in the case shows that these instructions were given by the court in its general charge to the jury, and in connection with each other, (although separately excepted to by the appellant) and were intended to be taken together, and to qualify each other. This was the light in which they were regarded by this court; that it was so, is evident from the expression in the opinion: "we think *this charge* is

correct," as well as from the entire discussion of the instructions. The latter portion of the charge, as to the measure of defendants' damages therefor, is qualified by the positive and explicit instruction in the former portion, that the jury "*will exclude and not consider* in ascertaining *these damages*, any general benefits arising from the construction or operation of the railroad," &c. Taken together, these instructions exclude general benefits from the account entirely, and do not permit them to be estimated in favor of either party in determining the question of damages. Although perhaps the charge as given in that case is not as perspicuous as it might be, the opinion of this court in that case evidently proceeds upon that hypothesis. We say, "the benefits which result to the country, or to particular communities by reason of the construction and operation of railroads, and other internal improvements prosecuted by private enterprise, although for public use, are to be shared equally by the citizens affected by them. * * * If benefits of this character are to be *recouped* from damages suffered by the owner of the land through which the road passes, the operation of the law must be very unequal and unjust. These allowances will fall upon but a small portion of those receiving benefits, and that portion, those whose lands have been taken and injured without their consent; thus requiring them to bear the whole public burden, and *at the same time denying to them advantages conferred upon others;*" that is, if the railroad company be allowed to deduct in their favor general benefits from the damages. But the only point decided in that case affecting the question here, is, that general benefits (as there defined) conferred on the owner of land taken in *invitum* for the railroad, cannot *be deducted* from the compensation due to the owner through whose land the road

passes for his damages. There is a material distinction between not permitting to be deducted from the damages suffered by the owner of land, general benefits accruing to the land by the construction of the road, (which is the rule laid down in the case just referred to) and adding such general benefits to the value of the land, as it was when taken, for the purpose of estimating the damages of the owner caused by such taking, (which is substantially the appellant's position here.) In the former case, the owner of the land is not charged with, nor does the railroad company receive credit for such general benefits, but the owner shares them equally with other citizens affected by them, and they are excluded from the account on either side, in determining the damages ; in the latter case, the owner not only receives the advantage of such benefits, in the increased value of his land, but such increase of value is credited to him, and charged to the railroad company, as one element of the owner's damages. Thus the railroad company not only confers a benefit upon the land, but is compelled also to pay the owner the value of such benefit because it has been conferred. This would be grossly unjust. The case of the *W. & St. P. R. R. Co. vs. Waldron*, is far from supporting the rule contended for by the appellant, but so far as it goes, is in an entirely different direction. The mistake into which the appellant, and the court below have fallen, was occasioned by the fact that they separated the instructions of the court below, which, taken together, we said were correct, and took the latter portion of such instructions, as laying down the rule of damages, without the essential qualification contained in the first portion.

The exceptions to the rulings and charge in this case must be sustained.

The estimate of the value of the plaintiff's property, and

the damages he suffered, stated by the witnesses, were all in accordance with the theory of damages suggested by the questions, and the jury, under the instruction given, must have been governed by the same rule; the damages, therefore, are based upon an erroneous principle. It is not necessary, therefore, to determine whether or not their finding was against the evidence, or excessive. For the errors stated, a new trial should have been granted, and the court was right in granting a new trial, whatever may have been the ground upon which it was granted.

Order affirmed.