**Staunton.**

VIRGINIA-CAROLINA RAILWAY COMPANY v. BOOKER AND OTHERS.

SEPTEMBER 12, 1901.

1. CONDEMNATION PROCEEDINGS—*Alienation of Land—Compensation—When Title Passes to Land Condemned—Entry Under Code, Sec. 1081.*—Title to land condemned in Virginia for public purposes remains in the owner until judgment of the court in the condemnation proceedings is rendered confirming the report of commissioners as to the damages assessed, and the payment of the money to the party entitled, or into court. The entry of the party condemning under the provisions of section 1081 of the Code does not give him title until there is a final judgment fixing the amount of the compensation, and the payment of the same to the parties entitled, or into court.

2. CONDEMNATION PROCEEDINGS—*Alienation of Land—Who Entitled to Compensation.*—Until the person entitled to acquire the property of another for a public use has so far progressed in condemnation proceedings as to take immediate possession thereof, no right to compensation for the land proposed to be taken and for damages to the residue of the tract accrues to the owner, and his conveyance of the *locus in quo*, in the absence of any reservation, carries with it to the grantee the right to such compensation and damages when the report of the commissioners is confirmed and the money is paid to him, or into court.

Error to a judgment of the Circuit Court of Washington county, rendered October 9, 1900, in a condemnation proceeding, wherein plaintiff in error was the plaintiff, and the defendants in error were the defendants.

*Reversed.*

The opinion states the case.

*White & Penn,* for the plaintiff in error.

*Fulkerson, Page & Hurl,* and *Daniel Trigg,* for the defendants in error.

CARDWELL, J., delivered the opinion of the court.

In the year 1888, the Abingdon Coal and Iron Railroad Company commenced proceedings in the County Court of Washington county to condemn a right of way through certain lands of W. O. Booker. July 20, 1888, the commissioners appointed to ascertain what would be a just compensation for the land proposed to be taken and the damages to the residue of the tract, reported that 5 99-100 acres of "cleared land" would be taken for the road bed and right of way, which they valued at $50 per acre, aggregating $299.50, and that the damages to the residue of the "cleared land" would be $750; that 13 68-100 acres of the "knob land" would be taken, of the value of $2.50 per acre, aggregating $34.20, and that the damage to the residue of the "knob land" would be $250, making the total damages assessed $1,333.70. Exceptions were endorsed on the report by counsel for W. O. Booker on the ground that the damages assessed were inadequate, but no action was taken upon the exceptions or the report for nearly twelve years. In the summer of 1890, W. O. Booker contracted to sell his farm, through which the railroad's right of way was sought to be condemned, and on January 15, 1891, conveyed the same to the purchaser, The Litchfield Land Company. February 15, 1891, the Abingdon Coal and Iron Railroad Company entered upon the land and began grading its road bed, no objection being made by any one, but soon thereafter all work on the line of the road was discontinued and the enterprise apparently abandoned. All of the property of the Abingdon Coal and Iron Railroad Company was sold under deeds of trust, and the purchasers organized the Virginia Western Coal and Iron Railroad Company, and by an

act of the Legislature, approved March 1, 1898, the name of this
new company was changed to Virginia-Carolina Railroad Com-
pany. At the second December rules, 1897, of the Circuit
Court of Washington county, certain stockholders of The Litch-
field Land Company filed a bill to have its real estate partitioned
among its stockholders, and the charter of the company revoked
and annulled. Accordingly commissioners were appointed, the
real estate partitioned, and by a decree of May 6, 1898, the
report of the commissioners, as to the partition of the real estate,
was confirmed, and the charter of the company revoked and
annulled. In this partition all the "cleared lands" were given
to H. C. Stuart and the widow and heirs of W. A. Stuart, de-
ceased, and the "knob lands" to Mrs. C. P. Booker and T. P.
Trigg and associates, Mrs. Booker having acquired the rights of
her husband, W. O. Booker, in the lands. February 1, 1900,
H. C. Stuart and the widow and heirs of W. A. Stuart, deceased,
sold and conveyed to the Virginia-Carolina Railway Company
the right of way for its railroad as located and graded through
the lands partitioned to them, and on March 6, 1900, the Vir-
ginia-Carolina Railway Company paid into court the sum of
$1,333.70, the amount of damages ascertained by the commis-
sioners in their report of July 20, 1888.

Additional exceptions on behalf of W. O. Booker were filed on
April 18, 1900, to the commissioner's report, and when the
case came on to be heard, by consent of all parties in interest, at
the May term, 1900, of the County Court, the matter was sub-
mitted to the judge of the County Court for decision, subject
to the right of appeal, but only two questions were raised and
considered by the court—viz.: First, who is entitled to compen-
sation, etc., for the "cleared lands" of the Booker farm taken
by the Virginia-Carolina Railway Company for its purposes;
and, second, what interest should be allowed upon the compen-
sation, etc. The County Court, by its order made June 27,
1900, directed that one-third of the $1,333.70 paid into court

by the Virginia-Carolina Railway Company be paid to Mrs. C.
P. Booker, with interest thereon from February 15, 1891, and
that one-sixth of the $1,333.70, with like interest, be paid to
T. P. Trigg and associates.

This judgment having been, upon a writ of error awarded the
Virginia-Carolina Railway Company, affirmed by the Circuit
Court of Washington county, it is before us for review upon a
writ of error awarded by one of the judges of this court.

It is manifest that the order of the County Court complained
of is based upon the view that the fund paid into court by plain-
tiff in error belonged to the stockholders of The Litchfield Land
Company in proportion to their respective holdings, and that
they were entitled to their respective interests in this fund as
of February 15, 1891, when the Abingdon Coal and Iron Rail-
road Company went upon the land and began grading its road
bed.

Nothing whatever is said in the deed from W. O. Booker to
The Litchfield Land Company conveying the lands through
which the railroad's right of way runs about compensation for
the land proposed to be taken as the railroad's right of way, and
damages to the residue of the tract; nor did The Litchfield Land
Company ever treat this claim for damages as an asset of the
company. The conveyance from Booker to The Litchfield Land
Company is a simple conveyance of the land, without reference
to compensation or damages by reason of the proposed railroad,
and the partition of this land among the stockholders of the land
company was made without reference to such compensation in
damages.

Title to land condemned in Virginia for public purposes
remains in the owner until judgment of the court, in which the
condemnation proceedings are pending, confirming the report of
commissioners as to damages assessed, and payment of the money
to the party entitled or into court. Code of Virginia, section
1083.

Where there are exceptions to the report, the party seeking to condemn the land may pay the money into court, and may thereupon enter into and construct its works upon and through that part of the land described in the commissioner's report. Section 1081 of the Code. But this gives the party condemning no title to the land until there is a final judgment of the court fixing the amount of compensation, and the payment of same to the party or parties entitled, or into court. Section 1083 of the Code. *Robinson* v. *Crenshaw*, 84 Va. 348.

Arising, doubtless, out of diverse statutory provisions in the various States touching condemnation proceedings under the right of eminent domain, there is some conflict among the authorities as to the party entitled to compensation, where there has been a sale of the *locus in quo* pending condemnation proceedings.

In discussing this question, Lewis, in his work on Eminent Domain, section 318, says: " The right to compensation is a personal claim, and after it has once accrued does not pass by a deed of the land. When land is occupied wrongfully or by mere consent of the owner, express or implied, no right or title to the land so occupied passes, and a subsequent deed by the owner vests the entire estate in the grantee, and such grantee, in the absence of any reservation, is entitled to just compensation for the land so occupied. The grantor in such case who has not consented to the occupation of his land may recover damages for all damages sustained up to the time of the deed, to be estimated as in an action of trespass."

In section 627, this learned author further says: " Where a party, having power to acquire property for public use, enters upon and occupies property for the purpose of appropriating it to such use, without having complied with the law, a conveyance of the property pending such occupation, will vest the right to compensation in the grantee, whether the entry was with or without consent. The authorities are by no means harmonious

upon this proposition, but it is supported by the greater number and by the general rules which govern the acquisition of interests in real estate." * * *

In *Carli* v. *Stillwater, etc. R. & Co.*, 16 Minn. 260, a very similar case to this, the court said: " If the proceedings to condemn the property were completed, and the company acquired the title to the easement or right of way over the *locus in quo* before the execution of the deed, Carli (grantee) would take the premises subject to the right of the company, and the damages would inure to the owner of the land at the time the right vested in the company, but if the proceedings were not completed but inchoate, and the company did not acquire title to the easement prior to the execution of the deed, the premises passed to Carli, and he became the owner, and the right to damages was in him as an incident to the ownership." See, also, *Maginnis, &c.* v. *Nunnamaker*, 64 Penn. 374.

We have no case in Virginia adjudicating this precise question, but it clearly appears to be the policy of our statutes on the subject, that until the person or corporation entitled to acquire property for public use has so far progressed in condemnation proceedings, and against the will of the owner, as to take immediate possession thereof, no right to compensation for the land proposed to be taken and for damages to the residue of the tract accrues to the owner, and his conveyance of the *locus in quo*, in the absence of any reservation, carries with it to the grantee the right of compensation for the land taken, etc., when there has been a confirmation of the report of commissioners and payment to him or into court. As has been stated, there was no reservation in the conveyance of the *locus in quo* from W. O. Booker to The Litchfield Land Company of the right to compensation for the land proposed to be taken for the right of way of the Abingdon Coal and Iron Railroad Company, and at no time did The Litchfield Land Company treat this claim to compensation for the railroad's right of way as an asset, but sub-

mitted to a partition of its land among its stockholders without any reference to it whatever.

The right of way and road bed were taken into consideration by the commissioner, and partitioned as were other portions of the lands of The Litchfield Land Company. In doing this, the commissioner doubtless equalized the rights of all parties concerned, giving to each that to which each was entitled. The "cleared lands" were allotted to the Stuarts, and the "knob lands" to Mrs. Booker and Trigg and associates, and this partition was acquiesced in by the parties and confirmed by the court. By it the right of compensation for the land proposed to be taken for the railroad's right of way, and for damages to the residue of the lands, passed to the parties respectively as an incident of ownership of the lands partitioned to each. So that, when the condemnation proceedings had so far progressed as to give to the plaintiff in error the right of immediate entry upon the land against the will of the owner, these parties to whom the lands had been partitioned became entitled respectively to the compensation fixed by the commissioners in their report of July 20, 1888; the Stuarts became entitled to the compensation for the "cleared lands" taken, and to the damages to the residue of the "cleared lands," and Mrs. Booker and T. P. Trigg and associates to the compensation for the "knob lands" taken, and to the damages to the residue of the "knob lands." Plaintiff in error having acquired by purchase from the Stuarts a right of way for its railroad through the "cleared lands," appellees were only entitled, out of the fund paid into court March 6, 1900, by plaintiff in error, to the compensation fixed by the commissioner's report for the "knob lands" taken, and for the damages to the residue of the "knob lands."

The judgment complained of will, therefore, be reversed and annulled, and the cause remanded to be further proceeded with in accordance with this opinion.

*Reversed.*