WILLIAM J. RADKE v. W. G. MYERS AND OTHERS.[1]

April 26, 1918.

No. 20,808.

**Mortgage — good faith of holder — evidence.**

1. The evidence sustains a finding that one of the defendants who took a mortgage from a codefendant of property purchased by such codefendant of the plaintiff took in good faith for a present consideration without notice that the payment of a portion of the purchase money was deferred.

**Same — not subject to a vendor's lien.**

2. Under the findings, which are sustained by the evidence, the plaintiff vendor did not have a lien for the unpaid portion of the purchase price superior to that of the defendant mortgagee taking under the defendant vendee.

[1]Reported in 167 N. W. 360.

Action in the district court for Morrison county to recover $2,963.78 and to enforce a vendor's lien for the amount. The case was tried before Parsons, J., who made findings and ordered judgment against defendant W. G. Myers for $2,963.78, and dismissed the action as to George W. Myers and S. B. Bedford. From an order denying his motion for amended findings or for a new trial, plaintiff appealed. Affirmed.

*George S. Grimes,* for appellant.

*S. B. Wilson,* for respondents.

DIBELL, C.

This is an action by the plaintiff, William J. Radke, against the defendants, W. G. Myers, George W. Myers and S. B. Bedford, to enforce a vendor's lien upon real property sold by the plaintiff to W. G. Myers, the title to which was taken in the name of George W. Myers who mortgaged to Bedford. It resulted in a personal judgment against W. G. Myers and an adjudication that the plaintiff was not entitled to relief against George W. Myers or Bedford. The plaintiff appeals from the order denying his motion for a new trial. W. G. is the father of George W. and is the real party in interest. George W. in taking title and executing mortgages and in doing whatever he did acted for his father. When we speak of Myers we refer either to W. G. or to George W. acting for him. The real controversy is between the plaintiff and Bedford who took the mortgage and has since foreclosed and acquired title.

On February 25, 1914, the plaintiff as vendor and Myers as vendee executed a contract for the sale of a farm near Little Falls for $12,862.40. This contract contemplated the delivery of a deed and the placing of the purchase money in bank, "in escrow" as the contract states, to be paid when good title was made. By a later contract dated March 19, but in negotiation for some days, the terms of payment were changed. By this contract the plaintiff was to execute a mortgage on the farm for $5,000. Myers was then to give a second mortgage for $3,000; was to pay certain charges and incumbrances amounting to $1,898.62; was to pay the balance of $2,963.78 within 30 days after title was perfected, and was to secure this latter sum by the deposit of $707.90 in escrow in bank, a deed from a third person to the plaintiff of a lot in Sacred Heart, Renville county, and a bill of sale of a stock of hardware and fix-

tures in the building on the lot, all of the collateral security to be returned to Myers when payment was made. The deed from Radke to Myers was dated March 18, acknowledged March 19, and recorded May 2. The $5,000 mortgage was dated and acknowledged March 18 and recorded March 20. The $3,000 mortgage was dated March 18, acknowledged March 20, and recorded April 4. On March 18, Myers made his note to Radke for $2,963.78, payable 30 days after title was perfected. The money and deed and bill of sale were put in bank as agreed. On March 18, Myers executed a mortgage of $4,000 to Bedford and it was recorded on March 24. This mortgage was made subject to the $5,000 and $3,000 mortgages. Radke did not get his title perfected until in February, 1915, about a year after the contract. Myers prior to this procured the grantor in the deed of the Sacred Heart lot then in escrow to convey it to an innocent purchaser so that the security was then valueless. The hardware stock was sold on execution and the pledge of it by the bill of sale was of no avail. The court finds that the diversion of the collateral was effected by the fraud of Myers who at the time it was given intended to render it ineffectual.

1. The plaintiff claims that the mortgage to Bedford evidenced a pre-existing debt and that he was not a good faith mortgagee. The court finds that he took the mortgage in good faith for a present consideration and without notice that a portion of the purchase price was unpaid or that Myers contemplated a fraud on Radke and that he did not participate therein. The consideration of the mortgage was the conveyance of the Sacred Heart lot by Bedford to one designated by Myers. While the deed was earlier in date than the mortgage it was delivered about the same time and both constituted parts of a single transaction. The evidence sustains the finding both as to present consideration and good faith and want of notice.

2. The plaintiff claims that even if Bedford was a good faith mortgagee his vendor's lien is prior. We do not reach this conclusion.

If the plaintiff had sold the farm on March 18, and had taken a purchase money mortgage for the unpaid purchase price, it would be conceded that the purchase money mortgage was prior to the mortgage to Bedford even though the latter was of record at the time. Schoch v. Birdsall, 48 Minn. 441, 51 N. W. 382. Such a situation is not before us

and different principles apply. Myers had at the time an interest through his contract though not of record. He did not have the legal title. His interest was limited by the contract. The Bedford mortgage was given in anticipation of the acquisition of the legal title by Myers, and legal title was acquired on terms mutually satisfactory to Myers and Radke, and the mortgage expressly recited the $5,000 and the $3,000 mortgages as prior liens. It is not found when it was delivered. No purchase money mortgage was taken by Radke as easily there might have been. Instead other security, the cash deposit and the deed and bill of sale referred to, was taken for the note of $2,963.78, evidencing the deferred payment.

The doctrine that a vendor has a lien upon the property sold for the unpaid purchase price is an established one in English equity and is quite generally but not universally recognized in this country, though there is not an entire agreement as to the real basis of it. 2 Jones, Liens, § 1061, et seq.; 3 Pomeroy, Eq. Jur. § 1249, et seq.; 3 Devlin, Deeds, § 1249, et seq.; 2 Warvelle, Vendors, § 676, et seq.; 39 Cyc. 1787; 29 Am. & Eng. Enc. (2d Ed.) 734. It is at war with the policy of the registration system. That it ever obtained recognition under a registration system is the subject of frequent judicial regret. In this state it is recognized but is disfavored, and here as elsewhere it is not of avail to effectuate a secret lien against the superior equity of a bona fide purchaser or encumbrancer. Selby v. Stanley, 4 Minn. 34 (65); Daughaday v. Paine, 6 Minn. 304 (443); Duke v. Balme, 16 Minn. 270 (306); Dawson v. Girard L. Ins. A. & T. Co. 27 Minn. 411, 8 N. W. 142; Hammond v. Peyton, 34 Minn. 529, 27 N. W. 72; Peters v. Tunell, 43 Minn. 473, 45 N. W. 867, 19 Am. St. 252; Bang v. Brett, 62 Minn. 4, 63 N. W. 1067; 2 Jones, Liens, § 1063, §§ 1076-1081; 3 Pomeroy, Eq. Jur. §§ 1251-1253; 3 Devlin, Deeds, § 1269; 29 Am. & Eng. Enc. (2d ed.) 736, 756; 39 Cyc. 1819.

The priority of Bedford's mortgage is safely rested upon the ground that he in good faith took it, though the legal title was not then in Myers, in anticipation of its vesting, as it did, and without notice that the payment of a portion of the purchase price was deferred. That it was taken a day or a few days before Myers got legal title, in anticipation of its coming, we cannot think is controlling. No definite rule determines

the application of the doctrine which gives a vendor's lien. Largely it is a contest of equities. In 2 Jones, Liens, § 1063, the author, reviewing the English and American cases, puts it this way:

"The doctrine is no more satisfactory now than it was in Lord Eldon's time; in fact, it is much less so. From the nature of the equity, there could be but few fixed rules regarding it; but it will be observed in following the American decisions, which are numerous, that there is hardly a rule upon the subject that has not been somewhere denied; that hardly any two states can be found in which the courts agree upon all the important points of the doctrine; and that the cases are not rare in which the decisions in the same state are irreconcilable. The remark of Lord Mansfield, that 'the more we read, the more we shall be confounded,' is not without its application here. The inquiry in every case is, whether there are other equities superior to his lien, or whether it has been waived by any act of the party claiming it."

The same view is stated by Mr. Pomeroy. 3 Pomeroy, Eq. Jur. § 1251.

Bedford's equity is superior to that of Radke through his secret lien. Again, the view of the trial court was, although its finding is not explicit, that by taking the additional security for the $2,963.78 Radke waived his lien. Considering the question as one of fact, the evidence sustains the court's view. Selby v. Stanley, 4 Minn. 34 (65); Daughaday v. Paine, 6 Minn. 304 (443); 3 Dunnell, Minn. Dig. § 10057; 3 Pomeroy, Eq. Jur. § 1252; 2 Jones, Liens, §§ 1086-1090; 3 Devlin, Deeds, § 1262; 39 Cyc. 1835; 29 Am. & Eng. Enc. (2d Ed.) 763. And the court was of the view that the fraud of Myers in inducing Radke to accept the securities obviated the waiver which otherwise would have resulted. See Duke v. Balme, 16 Minn. 270 (306); Tobey v. McAllister, 9 Wis. 463; Nysewander v. Lowman, 124 Ind. 584, 24 N. E. 355; Brown v. Byam, 65 Iowa, 374, 21 N. W. 684; 2 Jones, Liens, § 1088; 3 Devlin, Deeds, § 1268. If waived by the taking of security it was not revived as against Bedford, a good faith mortgagee, by the fraud of Myers in inducing the acceptance of the securities.

The court reached the equitable and right result.

Order affirmed.