## CARRIE A. SHOVE AND OTHERS v. BURKHOLDER LUMBER COMPANY AND OTHERS.[1]

January 5, 1923.

No. 23,075.

**False representations.**

1. The findings that defendants made false and fraudulent representations to plaintiffs as to the value of the property given in exchange for the latter's house and lot are sustained by the evidence as is also the finding that plaintiffs relied on such representations and were thereby induced to make the exchange.

**Judgment against lumber company proper.**

2. A judgment was properly awarded against the Burkholder Lumber Company in whose behalf the false representations were first made and the one finally receiving the title to the house and lot, even though in the deal there were different substitutions of agreements for the convenience of all the parties.

**Exclusion of letter offering to rescind proper.**

3. There was no error in excluding a letter offering to rescind, written by one of the defendants to plaintiffs after the deal was consum-

[1]Reported in 191 N. W. 397.

mated and the rights of a third party had intervened. Where an executory agreement has been partly or wholly performed, the party whose fraud induced its making cannot avoid damages to the defrauded party by an offer to rescind.

**Vendor's lien sustained.**

4. A vendor's lien, though not favored, exists under the law of this state. And the court did not err in imposing it to the extent that the purchase price of plaintiffs' property was unpaid, because of the absence of the represented value of the properties which plaintiffs were induced by defendants' false and fraudulent representations to accept in exchange.

**Vendor's lien did not include any sum for purchase price of personalty.**

5. Although there is no vendor's lien as to personal property sold, the fixed value of such property involved in this transaction being less than the value found of the property accepted in the exchange, it may be said that the lien decreed does not include any amount for the unpaid purchase price of the personal property.

Action in the district court for Hennepin county to recover $10,-000 for fraudulent representations in exchange of property. The case was tried before Molyneaux, J., who made findings and ordered judgment in favor of plaintiffs for $1,879. From an order denying their motion for amended findings and conclusions or for a new trial, defendants appealed. Affirmed.

*Allen & Fletcher*, for appellants.

*Thompson, Hessian & Fletcher*, for respondents.

HOLT, J.

The action is for damages sustained through the alleged false and fraudulent representations by defendants as to certain stock and mortgages given in exchange for plaintiffs' house and lot in Minneapolis, Minnesota, and for a lien therefor on the house and lot. Plaintiffs prevailed. Defendants appeal from the order denying a new trial.

The trial was to the court. In the oral argument counsel for defendants frankly conceded that this court should not hold the findings that defendants had made the fraudulent representations un-

sustained, but he insists that the finding that plaintiffs relied thereon and were deceived thereby in making the deal is without support. It would not profit to give a resume of the evidence. However, no one can read it without being convinced that the infirmities of old age have laid a heavy toll upon the judgment and mentality of one of plaintiffs, the head of the family, and that the other two, his wife and sister, both aged, neither appreciate this condition nor have any business experience or judgment of their own, but are inclined to trust any smooth talker they may happen to listen to. All the plaintiffs were in that childlike attitude which readily accepts and relies upon the statements of others, even though made by those having adverse interests. It is evident that persons like plaintiffs would, in their testimony, not only disclose these frailties, but also give the other side many openings for plausible attack. More of the latter could undoubtedly have been obtained, had defendants' counsel been less fair minded and considerate than he is. But he makes the most of the situation in his argument. However, we think the findings are amply sustained both as to the misrepresentations made by defendants and as to plaintiffs' reliance on their truth in parting with their property.

The face value of the two mortgages was $6,500 and the representations, as found, were that such value was only 40 per cent of the value of the land which was said to be ore bearing. The land was in the extreme northern part of the state, and was found by the court not to exceed $1,040 in value. The stock traded, represented as worth par, or $2,500, was wholly worthless. The court also found the value of plaintiffs' equity in the house and lot, together with certain household furniture given in exchange for the stock and mortgages, and fixed plaintiffs' damages at $1,879. Judgment was ordered against each of defendants, and a vendor's lien given on the house and lot, subject only to the encumbrances thereon at the time defendants acquired the title.

It is contended that it was error to order judgment against the Burkholder Lumber Company. The defendants are: Burkholder Lumber Company, J. B. Burkholder and Northwest Mortgage & Holding Company. The last named is not a corporation, but is

termed by Mr. Burkholder a "common law corporation," and consists of himself and a bookkeeper, whose interest therein is nominal. Mr. Burkholder controlled the real as well as the pseudo corporation, and through him the trade with plaintiffs was effected. The first agreement was made in the name of Burkholder Lumber Company, but it turned out that the holding company held the mortgages, and a second contract with it was substituted for the first. It was first arranged that the house and lot should go to Mr. Burkholder, but finally a contract was substituted, whereby the title was vested in the lumber company. The negotiations began with that corporation, it became a party to the first contract, and eventually became the owner of the house and lot. In the original misrepresentations, there is no doubt that Mr. Burkholder acted for the corporation. The final deal, by which it obtained the property, was but a modification of the first contract made for the convenience of all parties. The fraud practiced in the inception of the negotiations persisted throughout. All the defendants were connected with the fraud practiced to induce plaintiffs to part with their property. Under such conditions it matters little that the holding company assigned the mortgages, that the stock came from Burkholder or some one else, or that furniture of the agreed value of $878 was transferred by plaintiffs to Burkholder. We think a personal judgment was properly ordered against Burkholder Lumber Company.

Exclusion of two letters written by Mr. Burkholder to plainttiffs after the deal had been at least partly, if not wholly, consummated is assigned as error. There was a tentative and conditional offer to rescind in the letters. When these were written Mr. Burkholder well knew that plaintiffs were not in condition to rescind. A third party had then entered into the trnasaction. Plaintiffs then occupied the house and lot as tenants of defendants. The contract was not wholly executory, and offers to rescind came too late. Humphrey v. Sievers, 137 Minn. 373, 163 N. W. 737; Townsend v. Jahr, 147 Minn. 30, 179 N. W. 486; Dawson v. Thuet Bros. 147 Minn. 429, 180 N. W. 534. The trial was to the court, who no doubt saw in the letter of July 29, 1918, a plain effort to forestall the consequences

of the fraud. It was delivered on the same day that the mortgages and stock were turned over to plaintiffs and the deal closed, but not until some hours later. The other letter excluded, sent a long time afterwards, was clearly inadmissible.

Was the court authorized to decree the judgment a lien upon the house and lot? No rights of innocent purchasers or mortgagees are here involved. The title still remains in one of the wrongdoers. Because of the fraud practiced, plaintiffs failed to receive $1,879 of the purchase price they ought to have got. We think the situation justifies the imposition of a vendor's lien under the authority of Duke v. Balme, 16 Minn. 270 (306). There, because of fraudulent representations of the vendee, the property accepted as payment for land turned out worthless and a vendor's lien was given. Although in disfavor, vendors' liens have been recognized and enforced in appropriate cases ever since Selby v. Stanley, 4 Minn. 34 (65). It would have been given in Radke v. Myers, 140 Minn. 138, 167 N. W. 360, a case where the vendee's fraud resulted in damages to the vendor, except for the fact that the vendee's title had passed by foreclosure into the hands of a subsequent innocent mortgagee, as found by the trial court.

Defendants cannot claim a waiver of a vendor's lien by the acceptance of the notes and mortgages of third parties or this stock, for their misrepresentations induced plaintiffs to accept the same as payment, which failed to the extent found by the court. They are estopped to assert a waiver of the lien. But it is contended that in the transaction entered personal property for which no vendor's lien may be had, Peters v. Tunell, 43 Minn. 473, 45 N. W. 867, 19 Am. St. 252. However, in that case the sale was of both real and personal property for one entire sum without any distinct price being set upon either. Here a price was placed upon the personal property. This was less than what the court found the value of the mortgages. The value of the mortgages may therefore be properly applied in payment of the personal property, so as to leave the balance unpaid wholly upon the real estate without doing any injustice to defendants.

We discover no substantial error in the record.

The order is affirmed.