Marcus D. L. Simpson v. Charles Mundee and Warren Brown.

*Error from Leavenworth County.*

The recording of an unacknowledged deed is sufficient to charge with notice, subsequent purchasers.

In absence of statutory provisions, a deed signed and unacknowledged, as against the grantor and those claiming under him, would convey any interest of the grantor which the deed purports to convey.

The statute of 1859, requires the conveyance of any interest in lands exceeding ten years in duration to be in writing, signed, &c. If in writing, it is sufficient without acknowledgment to effect real estate, and every person having actual knowledge thereof is bound by it.

Section 13 of the act regulating conveyances (Comp. L., 355) by direct implication, declares that *any* instrument affecting real estate shall be good against subsequent purchasers, if recorded.

The statute only provides that if a deed be acknowledged and certified, the original, or a certified copy of the record may be read in evidence without further proof.

The doctrine of *vendor's lien* as administered in England (that if the grantee at the time of the purchase has not sufficient personalty out of which the purchase money can be made, the land is liable to the lien—is freed from it whenever the grantee acquires a sufficiency, and returns again on insolvency of the grantee,) does not arise out of the contract of the parties, nor result from the operation of law, but is the mere creature of the court of equity, breathed into existence independently of original intention of the parties, and without their aid.

The general policy of the real estate law of Kansas, is to discountenance secret trusts—to require everything concerning the title to or rights in

land to be in writing, and to simplify the means of securing liens, and *held* that the doctrine of *vendor's lien* is repugnant to, and would practically change this policy as contemplated and established by statute, and *held* that it is not necessarily a part of it.

The facts of the case sufficiently appear in the opinion of the court.

*Gambell & Fitzwilliam*, for plaintiff in error.

*Clough & Wheat*, for defendants in error.

The case was argued by *W. P. Gambell*, for plaintiff in error, on the following:

I.  After the absolute conveyance of the lots by Brown to Mundee, Brown retained no lien. The court below failed to see the distinction between a vendor's lien after an absolute conveyance, and a lien where the contract of sale is unexecuted. In the latter case, the vendor holds the legal title as security for the payment of the purchase money; in the former, the vendor retains a mere equity, which, to become of any force, must be established by a decree of the court. Until so established, it is a *mere* equity, capable of acquiring the force of a lien under certain circumstances. 1 *Leading cases in Equity, H. & W.'s notes, case of Macreth* v. *Symmons, p.* 371, *and cases cited. Stevens' Appeal,* 38 *Penna.,* 9; *Bauer* v. *Grisby,* 21 *Cal.,* 173; *Green* v. *Demass,* 10 *Humph.,* 374.

II.  This equity being neither a specific lien, nor a trust qualifying the estate in equity, the rights of lien creditors are paramount to it. The plaintiff, being a subsequent mortgagee, is a lien creditor. *Macreth* v. *Simmons supra.*

III.  The deed not being recorded, the plaintiff had no notice that a part of the purchase money was unpaid; and the court found as a conclusion of fact that he had no actual notice. *Comp. L.,* 354.

*a.*  It is claimed that the law imparted notice, because Simpson claims through Brown. But the most that can

be claimed is that this would put plaintiff upon inquiry, and this does not amount to notice. *Goodman* v. *Simonds*, 20 *How.*, 343; *Hewit* v. *Loosemore*, 9 *Eng. L. & E.*, 35; *Dey* v. *Dunham*, 2 *J. C.*, 182; *Id.*, 15 *John.*, 555; *Jackson* v. *Given*, 8 *Johns.*, 137; *Jackson* v. *Esten*, 12 *Id.*, 452; 1 *Story's Eq.*, sec. 400; *Williamson* v. *Brown*, 15 *N. Y.*, 354; *The Belmont Branch, etc.* v. *Hoge*, 8 *Bosw.*, 543; *Parker Mills* v. *Jacot*, 8 *Id.*, 176.

IV.   The conveyance in this case was by quit-claim deed, containing no covenants; and it seems clear that this circumstance negatives the idea that the vendor intended to retain a lien.   Besides, the recitals in the deed show that this note was intended to be received in payment.

V.   A bill filed to enforce this implied lien must show that the plaintiff has exhausted his remedy against the personal estate of his vendee, or that he has no personal estate out of which the claim can be made.   And judgment for a sale under the lien in the first instance, unless the record shows that the vendee has no personal property, is erroneous.   In this case there is neither allegation nor proof on this point.   *Scott* v. *Crawford*, 12 *Ind.*, 410; *Eyler* v. *Crabb*, 2 *Maryland*, 137; 1 *Lead. cases in Eq'ty*, *H. & W.'s notes, p.* 366.

The case was argued by *L. B. Wheat*, for defendants in error, on the following points:

1st.   The recording of the deed from Brown to Mundee did not hurt the case of Simpson.   Without the deed neither he nor Mundee ever had any right to or lien upon the lots.   It was competent to show the record to prove the fact of its being recorded as alleged in Brown's answer.

Our recording laws in force in 1859 did not require a deed to be acknowledged or proved before it could be recorded.   Section 13 of the act regulating conveyances pro-

vides that no instrument is of any validity against subsequent purchasers unless recorded, &c., but it makes no mention of acknowledgment or proof, nor does it in any previous section. The subsequent portion merely provides that when a deed is acknowledged or proved as therein provided, the same or the record or a certified copy of the record thereof shall be *admissible in evidence* without further proof. *Comp. L.,* 355.

2d. Brown was only seeking in substance to recover the value of the consideration he had parted with on the faith of the parol contract, and parol evidence was always admissible to show a parol sale of lands, when the suit was brought to recover back purchase money advanced.

3d. Brown had a vendor's lien on the lots for the amount due him on the note against Mundee, and also against Simpson, if Simpson took his mortgage with either actual or constructive notice of the fact that the purchase money due Brown on said note was unpaid. *Macreth* v. *Symmons,* 1 *Lead. cases Eq.,* 336, *and cases*; *Dart's Vendors and Purch.,* 119, *and cases, and p.* 345, *note*; *Barnes* v. *Ewing,* 17 *Ohio,* 500; 2 *Id.,* 385.

4th. It will be presumed Brown intended to retain this lien. 1 *Hilliard Mortg.,* 483, *sec.* 59, (*1st ed.*); 2 *U. S. Eq. Dig.,* 243, *sec.* 291; 1 *Lead. cases Eq.,* 363; *Dart's Vendors and Purch.,* 345, *note*; 17 *Ohio,* 500; 2 *Id.,* 385.

5th. Inasmuch as neither Mundee nor Simpson had any right to the lots except and only through and by reason of Brown's deed to Mundee, and as that deed showed the debt, and that the purchase money was not paid, that by reason (and without regard of or reference to the recording laws or any thing in connection therewith,) the law gave notice to Simpson of the contents of said deed, and that the purchase money due Brown was unpaid, and that Brown had a vendor's lien therefor.

6th. A purchaser is presumed to investigate every instrument forming a link in the title he purchases, and has

notice of the contents thereof. *See* 1st *Story's Eq.*, 435, *note* 3.

7th.    An instrument in the chain of title under which a person claims or buys land, gives a purchaser notice of the title he buys and of its defects, and of the liens thereby created.    2 *U. S. Eq. Dig.*, 663, *secs.* 262 *and* 276, 283 ; *Id.*, 664, *sec.* 309 ; 13 *U. S. Dig.*, 638, *sec.* 7 ; *Id.*, 639, *sec.* 23 ; 14 *Id.*, 418, *sec.* 74 ; *Id.*, 581, *sec.* 27 ; *Id.*, 580, *sec.* 8 ; 15 *Id.*, 265, *secs.* 114 *and* 119 ; 17 *Id.*, 588, *secs.* 29, 30 ; 18 *Id.*, 498, *sec.* 192 ; 20 *Id.*, 633, *sec.* 186 ; 3*d How. U. S.*, 333, (410) ; 3*d Iredell Ch.*, 535 ; *Walk. Ch.*, 459 ; 13*th Mo.*, 13 ; 17 *Penna. St. R.*, (5 *Harris*,) 433 ; 18 *Ala.*, 741 ; 17 *Eng. L. & Eq.*, 487 ; 24 *Miss.*, 208 ; 4 *Rich. Eq.*, 105 ; 19 *Penna. St. R.*, (7th *Harris*,) 38 ; 20 *Id.*, (8 *Harris*, 236 ; 14 *Texas*, 318 ; 14 *B. Mon.*, 277 ; 9*th Ind.*, 490 ; 23*d Texas*, 649 ; 1 *Hill. on Mort.*, 632, *sec.* 32.

8th.    Notice of an instrument is notice of the contents thereof.    *See cases above cited. and* 2*d U. S. Eq. Dig.*, 663, *sec.* 283 ; 3*d Iredell*, 535.

9th.    A purchaser of land buys at his peril and is bound to look to the title and the competency of his vendor, and can get no more rights than has been in his vendor.    2*d U. S. Eq. Dig.*, 652, *sec.* 6 ; 1st *Johns. Ch. R.*, 566 ; *Harsh* v. *Morgan*, 1 *Kans. R.*, 302.

10th.    Notice of an incumbrance is notice of its extent. 2 *U. S. Eq. Dig.*, 662, *sec.* 249 ; 8*th Paige R.*, 182.

11th.    Constructive notice of a vendor's lien is sufficient to preserve and maintain it.    17 *U. S. Dig.*, 389, *secs.* 114, 115 ; 14 *B. Mon.*, 277.

12th.    The statement of the note in the deed was sufficient to protect the lien against Simpson.    10 *U. S. Dig.*, 313, *sec.* 80 ; 21st *Vt.*, 271.

13th.    Knowledge that some portion of the purchase money is unpaid is sufficient to put purchasers on inquiry. 10 *U. S. Dig.*, 313, *sec.* 80 ; 21st *Vt.*, 271 ; 1st *Hilliard on Mortgages*, 632, *sec.* 31.

14th. Whatever puts a party on inquiry, is notice. *1st Story's Eq., p.* 428, *sec.* 400, *note* 4; *2d U. S. Eq. Dig.,* 663, *secs.* 260, 264, *and cases there cited*; 10 *U. S. Dig.,* 314, *secs.* 92, 95; 15 *Id.,* 555, *sec.* 8; *1st Texas,* 326; 14 *Ark.,* (1 *Barb.,*) 69.

15th. Simpson had notice of the lien, from Brown's deed to Mundee. *See cases cited*; 8 *U. S. Dig.,* 259, *sec.* 82; *Id.,* 260, *secs.* 89, 90; 10 *Id.,* 313. *sec.* 80; 14 *Id.,* 580, *sec.* 8; 10 *S. & M.,* 143; 6 *B. Mon.,* 67; 21 *Vt.,* 271; 4 *Rich. Eq.,* 105; 1 *Johns. Ch. R.,* 398, 399.

16th. Brown had a lien for the amount due him on said note, and that he retains it, notwithstanding the trade or contract of 1861, against both Mundee and Simpson. 2 *U. S. Eq. Dig.,* 243, *sec.* 278; 8 *U. S. Dig.,* 259, *sec.* 73, 81; 9 *Id.,* 318, *sec.* 74; 11 *Id.,* 312, *sec.* 49; 15 *Id.,* 266, *sec.* 129; 16 *Id.,* 436, *sec.* 110; 19 *Id.* 457, *sec.* 111; 20 *Id.,* 677, *secs.* 286, 287; 6 *S. & M.,* 286; 9 *Id.,* 527; 8 *B. Mon.,* 217; 9 *Id.,* 363; 17 *Ohio,* 500; 1 *Busbee Eq.,* (*N. C.*) 43; 23 *Penna. St. R.,* 186; 31 *Id.,* 293; 13 *Cal.,* 526.

17th. Inasmuch as the consideration for which Brown released Mundee from the note failed, therefore the release is avoided and Brown is in the same position as though the transaction of 1861 had not taken place. *Highway* v. *Pendleton,* 15 *Ohio,* 735, 757.

18th. There is no merger of the title to the lots with Brown's lien, even if the title had come back to him by the transaction between him and Mundee, of 1861, because of the out-standing and intervening rights of Simpson. *3d Cushing,* 557; 14 *Pick.,* 374; 9 *Cowan,* 213; 8 *Watts,* 150.

19th. Simpson did not acquire the position of a *bona fide* purchaser, by reason of the giving up of the note, he not having advanced any new consideration thereafter,—an antecedent debt not being sufficient to constitute him such *bona fide* purchaser; wherefore Brown still claims his lien against him. *2d U. S. Eq. Dig.,* 662, *sec.* 238; *Id.,*

240, *sec.* 210; 8 *U. S. Dig.*, 259, *sec.* 85; 9 *Id.*, 317, *sec.* 67; 12 *Id.*, 415, *sec.* 93; 16 *Id.*, 436, *sec.* 108; 20 *Id.*, 633, *sec.* 172; *Id.*, 994, *secs.* 40, 44; 4 *Scam.*, 390; 2d *U. S. Eq. Dig.*, 660, *secs.* 186, 190; *Id.*, 661, *sec.* 222; *Id.*, 662, *secs.* 238, 233, 235, 236; 13 *U. S. Dig.*, 639, *sec.* 22; 14 *Id.*, 580, *sec.* 1; 4 *Paige*, 221-2; 20 *Johns.*, 637; 2d *Edward's Ch.*, 505; 7 *Humph.*, 239; 3 *Barb.*, 267; 23 *Miss.*, 136; 21 *Barb.*, 327; 26 *Ga.*, 315; 29 *Barb.*, 505; 8th *Florida*, 405; 1 *Sumner*, 506; 10 *Peters*, 177; 4 *Paige*, 215; 18 *Ala.*, 50; 16 *Barb.*, 264; 1 *Hill.*, *on Vendors*, 406 *note* 61; 2 *Story's Eq.*, 958-9, *note* 2; *Story's Pl.*, 754, *sec.* 805-6, *and notes*; 8 *Mo.*, 303; 18 *Ill.*, 343, *and cases cited.*

20th. It was not necessary for Brown to sue for the debt alone before enforcing his lien, as was done in this case. 1st *Lead. cases in Eq.*, 366-7; 3 *Beaver*, 64; 10 *Yerg.*, 186; (2 *Gilman*, 327); 2 *Ohio* 395; 5 *J. J. Marsh*, 323; 1 *Id.*, 212; 1 *Dana*, 576; 17 *Ohio*, 500.

It is the custom in this state to sue and recover a personal judgment for the debt, and to enforce all equitable liens, and obtain an order for the sale of the property on which the lien exists, in the same suit.

21st. If a vendor has a lien, and a mortgagee under the purchaser brings a bill to foreclose, the court should decree a sale and appropriate the proceeds, first to the payment of the lien, and next of the mortgage. 1 *J. J. Marsh*, 212; 1 *Hill. on Mort.*, 657, *sec.* 87, *a.*

22d. Vendor's lien may be treated as a mortgage, and the general rights and remedies incident thereto are substantially similar to those created by an express mortgage. 1 *Hill. on Mort.*, 614, *secs.* 1 *and* 2.

*By the Court*, CROZIER, C. J.

On the 21st day of October, A. D. 1859, Warren Brown, one of the defendants in error, being the owner of certain lots in Leavenworth, conveyed the same to Charles Mundee, another of the defendants in error, by a general

quit-claim deed of that date of which the following is a copy:

"Know all men by these presents that I, Warren Brown, of the county of Leavenworth, territory of Kansas, in consideration of a certain promissory note bearing even date with these presents, for the amount of fifteen hundred dollars payable twelve months after date without interest, executed in my favor, by Charles Mundee of the county and territory aforesaid, and in further consideration of the sum of one dollar to me in hand paid by the said Charles Mundee, the receipt whereof, I do hereby acknowledge, have bargained and sold and quit-claimed, and by these presents do bargain, sell and quit-claim unto the said Charles Mundee, and to his heirs and assigns forever, all my right, title, interest, claim and demand, both in law and in equity, and as well in possession as in expectancy, in and to all that certain piece of land, situate in the county of Leavenworth, territory of Kansas, and known as lots number seventeen, (17) eighteen, (18) nineteen, (19) and twenty, (20) in block number sixty-three, (63) according to the original plat of said city of Leavenworth; and all and singular the hereditaments and appurtenances thereunto belonging. In witness whereof, I have hereunto set my hand and seal this 1st day of September 1859.

WARREN BROWN, [*Seal*]."

This deed was not acknowledged, or was insufficiently certified to have been acknowledged. It was recorded in the office of the register of deeds of Leavenworth county, on the 5th day of December, A. D. 1859. A note corresponding with that described in the above deed was executed by Mundee to Brown and delivered on the day the deed was delivered, viz: October 21st, 1859.

On the 3d day of January, A. D. 1860, Mundee mortgaged the above described lots to Simpson, the plaintiff in error, to secure a promissory note of that date for two

thousand dollars, which mortgage was recorded in the proper office, on the fourth day of the same month.

About July 1st., A. D. 1861, Brown delivered to Mundee his note which has since been lost or destroyed, and Mundee returned the quit-claim deed above set out to Brown, when Brown tore his name off it.

At the time Mundee mortgaged the lots, Simpson had no actual knowledge of the deed to Mundee; and at the time the note and deed were returned, Brown had no actual notice of the mortgage to Simpson. The amount of the note of Mundee to Simpson never was paid.

Simpson brought suit in the District Court of Leavenworth county, to foreclose his mortgage. Brown having been made a party defendant, by consent, filed an answer claiming a vendor's lien upon the premises described in his deed to Mundee, for the amount of the note made by Mundee to him, together with interest; the said note having been given for the purchase money.

The cause was submitted to the court for trial, and having found the facts substantially as set out above, the court found a conclusion of law that Brown had a vendor's lien upon the property in controversy, and that it was prior to the lien of the mortgage to Simpson.

Counsel for Simpson excepted to the conclusion of law, and made motions for judgment in his favor and for a new trial, both of which were overruled, and he excepted; whereupon judgment was rendered subjecting the property to sale, and ordering Brown's claim to be first satisfied out of the proceeds.

This proceeding is instituted to reverse that judgment.

Several points were made, the most prominent of which, are:

*First.* Simpson had no notice that the purchase money had not been paid by Brown to Mundee; and,

*Second.* Although he may have had such notice, yet Brown had no lien.

The deed from Brown to Mundee was not acknowledged; and although in fact recorded in the office of the register of deeds in the county in which the lands are situate, it is claimed that this was not sufficient to charge Simpson with constructive notice of its contents. The question presented is, whether a deed purporting to convey real estate in this state must be acknowledged in order to be the proper subject of record? It will be recollected that the deed was signed by Brown alone, his wife, if he had one, not joining with him in its execution.

In the absence of any statutory provision to the contrary, a deed signed by a man would convey any interest in the land the deed might purport to convey, and although not acknowledged, would be good against him, and everybody claiming under him. The statute of this state requires that the conveyance of any estate or interest in lands exceeding ten years in duration, shall be in writing, signed by the person granting the same, or by his agent authorized in writing so to do. If it be in writing it is sufficient, without acknowledgment to " affect real estate," and every person having actual knowledge of such conveyance is bound by it.

Section 13 of the act regulating conveyances, (Comp. L., p. 355,) provides that, " no instrument affecting real estate, is of any validity against subsequent purchasers for a valuable consideration, without notice, unless recorded," &c., by direct implication, declaring that any instrument affecting real estate, shall be good against subsequent purchasers if recorded. The statute nowhere makes an acknowledgment necessary to the validity of a deed. If it be sufficient to affect real estate without acknowledgment, then it may be recorded, and if it be recorded, then subsequent purchasers are charged with notice. The statute only goes to the extent of providing, that if a deed be acknowledged and certified in the manner prescribed, the original may be read in evidence

without proof of the execution; or if recorded, a certified copy of the record, upon proper proof of inability to produce the original, may be read.

The deed from Brown to Mundee having been in fact recorded in the proper office, although not acknowledged, Simpson had notice of its contents.

*Second.* Admitting that Simpson had notice of the non-payment of the purchase money by Mundee, did Brown have a lien for the same as against his mortgage? This brings us to the consideration of a very important question in our jurisprudence; one involving large interests, and for the first time presented to this tribunal. Having given the subject a careful examination, and having bestowed upon the general question much reflection, we can appreciate the earnestness of counsel in the maintenance of the doctrine of a vendor's lien, and although it would be gratifying to us to be able to follow the apparent weight of authority, yet in this instance we cannot in conscience do so.

Stripped of all verbiage, the naked question is: When the conveyance is absolute on its face, has the grantor in this state a lien on the land for the unpaid purchase money?

The higher courts of England have sustained the claim for a lien, but they have done so with apparent misgiving. It has been done of late years, not upon principle, but rather from precedent. The doctrine grew up there under circumstances peculiar to that country. At one time, under the laws of that country, the lands of a decedent were not subject to the claims of general creditors. His lands might be greatly in excess of the amount necessary to satisfy such claims, yet at law, they could not be subjected to their payment. Grantors of real estate, who had conveyed by deed absolute, were placed in the general category. At law they were wholly remediless unless the personal assets were sufficient. According to established

Simpson v. Mundee & Brown.

principles, they were not relievable in equity. They in common with other creditors had relied upon the personal solvency of the debtor, and the law furnished no reason for satisfying the claims of one from the proceeds of the realty, and excluding the others.

There was nothing in the contracts of either class indicating that they relied upon the real estate of the debtor for payment. In this condition of things equity was appealed to for relief. The chancellor deeming it unconscionable that the heirs should enjoy property which had not been paid for by the ancestor, regardless of any contract to that effect by the parties, improvised what is called the vendor's lien. Having enforced it in a series of decisions, while the law remained unchanged, it grew into a precedent and was enforced after the law was altered, and when the reason of its original adoption had ceased to exist. The question arose many times in an incidental or collateral way, and without much consideration the doctrine was sustained, but when it was squarely presented, the court, although it was affirmed, yet expressed regret that the doctrine had ever been recognized. And some of the American courts who have adopted the doctrine, express in emphatic language, their doubts of its propriety.

There is a great variety of opinion among modern courts as to what the vendor's lien is. Some of them regard it as a resulting trust, others as an equitable mortgage, and others still as a compound of both. Very manifestly it has none of the attributes of either. It does not arise out of the contract of the parties, nor does it result from the operation of law. It is the mere creature of a court of equity, breathed into existence independently of the original intention of the parties, and entirely without their aid. If the grantee at the time of the purchase has not sufficient personal property out of which the purchase money can be made, the land is liable to the lien. If he

shall acquire a sufficiency for that purpose, then the land is freed from any liability to the lien. But if insolvency shall return, then the liability returns.

It is said that. this impalpable entity, this protean quality, this ethereal essence which no man can graphically describe, and of which but few can have anything like a clear conception, is a part of the law of this state which this court is bound to enforce; that we adopted it from the mother country; that it has been woven into the web of our legal polity, and is ineradicable except by the action of the legislature. Is such the melancholy fact?

Some of the American courts when recognizing the doctrine, speak of "adopting" it. This language presupposes the ability to reject it, and literally construed suggests on the part of the court, a sort of a claim to legislative power. But this evidently is not its meaning. They probably intend to be understood as saying, that having derived their jurisprudence from England, whose courts under certain circumstances enforced it, and the same being consistent with the general policy of our law, we will enforce it. And perhaps for the sake of completeness in their systems of jurisprudence it was proper that it should be enforced.

But here no such reason can exist. The general policy. of our real estate laws is to require everything concerning the title to, or rights in it, to be in writing. Secret trusts are discountenanced. In so far as real estate is concerned, directly or remotely, nothing is to be permitted to rest in parol.

The means of reserving and securing liens are simple and abundant. Real estate here, unlike in the earlier settled portions of the country, being one of the leading subjects of purchase and sale, it is not only convenient but good policy, that the regulations concerning its transfer should be clear, simple, compact, and as much as possi-

Simpson v. Mundee and Brown.

ble, free from cumbrous forms and solemnities. In framing the legislation, the law-makers have apparently acted with reference to these considerations, and the result is that a man of ordinary intelligence can readily discover what will secure to him a lien upon, or the title to real estate, unless indeed it shall be held that some such indescribable myths as the English vendor's lien constitutes a part of the law of the state. Were it held to be a part of the law, the great majority would not understand it, and but few could. What is its nature, when it attaches, against whom it may be enforced, are questions which cannot be satisfactorily answered from the decisions in states which have adopted it. The adoption of it here would work a practical change in the general spirit of the law of the state, and introduce into our legal polity an element of discord which must necessarily complicate our system of real estate law, and work consequences very disastrous.

The court is of opinion that the law of vendor's lien, as administered in England is not necessarily a part of the law of this state. That being repugnant to the general real estate jurisprudence of the state as contemplated and established by statute, a recognition of its existence here would savor more of legislative than judicial determination. Hence it cannot and should not be regarded as a part of the law.

Other questions were presented in the argument, but the conclusion at which the court has arrived upon those already considered, dispenses with the necessity of further examination.

The determination of this court is that the deed from Brown to Mundee was a proper subject for record, without acknowledgment, and having been in fact recorded, was notice of its contents to the whole world; and that the finding of the District Court as a conclusion of law, that Brown had a lien upon the lots for the unpaid pur-

24

chase money was erroneous. Therefore the judgment of that court will be reversed, and the cause sent back for such further proceedings as the law shall authorize.

All the justices concurring.