ALFRED T. HAMMOND *vs.* HAMILTON M. PEYTON, Assignee, and another.

February 23, 1886.

**Vendor and Purchaser—Vendor's Lien not Assignable.**—As a general rule, the equitable lien of a grantor of real estate for the price thereof is not assignable.

Appeal by plaintiff from an order of the district court for St. Louis, Lake and Cook counties, *Stearns,* J., presiding, sustaining a demurrer to the complaint.

The facts alleged in the complaint, briefly stated, are as follows, viz.: On February 3, 1881, one Semple, then the owner of certain described lands situate in Lake county, conveyed the same by deed in due form to Simon B. Paige and John A. Paige, who were partners as S. B. & J. A. Paige, in consideration of the sum of $4,500 to be thereafter paid. The deed was duly recorded in the office of the register of deeds of Lake county. No part of the purchase price for these lands has ever been paid, and no mortgage or other security for its payment was given to Semple, but the firm of S. B. & J. A. Paige gave their unsecured promissory note for the purchase price to Semple, payable to his order. Thereafter Semple, for a valuable consideration and before its maturity, duly indorsed and transferred this note to the plaintiff. At the maturity of this note on February 10, 1883, the plaintiff surrendered it and took in renewal a new note, which is still unpaid. In March, 1883, Simon B. Paige died, and on April 13, 1883, John A. Paige, as surviving partner, being insolvent, made an assignment to the defendant Peyton for the benefit of creditors. Before the death of Simon B. Paige, the Paige-Sexsmith Lumber Company, with full notice and knowledge that the purchase price therefor was unpaid, acquired certain equitable interests in the lands sold by Semple. The Paige-Sexsmith Lumber Company, becoming insolvent, on April 13, 1883, assigned all its property to the defendant Peyton for the benefit of its creditors. The other defendant, Mary E. Paige, is the widow of Simon B. Paige. Upon these facts the plaintiff prays that the sum of $4,500, with interest, be adjudged to be a first lien on the lands, and that the land be sold, etc.

v.34м—34

*Wm. W. Billson,* for appellant.

A vendor's lien is assignable. *Lagow* v. *Badollet,* 1 Blackf. 416; *Nichols* v. *Glover,* 41 Ind. 24; *Rakestraw* v. *Hamilton,* 14 Iowa, 147; *Sloan* v. *Campbell,.* 71 Mo. 387; *Watt* v. *White,* 33 Tex. 421; *Simpson* v. *McAllister,* 56 Ala. 228; *Broadwell* v. *King,* 3 B. Mon. 449; *Ripperdon* v. *Cozine,* 8 B. Mon. 465; *Mayo* v. *Carrington,* 19 Grat. 74, 120; *Willis* v: *Wright,* 22 Md. 373; *Dryden* v. *Frost,* 3 My. & Cr. 670; *Lord* v. *Wormleighton,* Jacob, 580; *Bull* v. *Falkner,* 13 Jur. 93; *Manlove* v. *Bale,* 2 Vern. 84; *Trimmer* v. *Bayne,* 9 Ves. Jr. 209; *Tuttle* v. *Howe,* 14 Minn. 113, (145;) 1 Pom. Eq. Jur. § 167; 3 Id. §§ 1254, 1233, 1275; 2 Sugden on Vendors, 398; 1 Lead. Cas. in Eq. 264, 368; Dart on Vendors, 723; Coote on Mortgages, 406; 2 Spence, Eq. Jur. 802.

*Ensign & Cash,* for respondent Peyton.

BERRY, J.[1] The equitable lien of a grantor for the price of real estate has been recognized by this court in *Selby* v. *Stanley,* 4 Minn. 34, (65;) *Daughaday* v. *Paine,* 6 Minn. 304, (443;) *Duke* v. *Balme,* 16 Minn. 270, (306;) and *Walter* v. *Hanson,* 33 Minn. 474. But whether the lien is assignable, or whether, if assignable, it passes upon the transfer of the debt which it secures as an *incident* thereof, and without any express or formal assignment, has not been here determined. It is to be regretted that the idea of a grantor's lien was ever admitted, especially in this country, where registration of transactions affecting real estate is so generally provided for and practised. It is, however, recognized in England, and in a majority of the states of the Union, though it is utterly repudiated by several, and in others has been abolished by statute. See 3 Pom. Eq. Jur. § 1249; Bisp. Eq. § 353; Tiedeman on Real Prop. § 292, and notes.

In *Mackreth* v. *Symmons,* 15 Ves. Jr. 329, (the leading case,) Lord Eldon appears to look upon the doctrine of lien with disfavor, (and see in the same direction *Kettlewell* v. *Watson,* L. R. 21 Ch. Div. 685, 702;) and in this country we find still more emphatic protests against it, and regrets that it should have ever been allowed to gain a footing. *Bayley* v. *Greenleaf,* 7 Wheat. 46, Marshall, C. J.; *Briggs* v.

---

[1] Vanderburgh, J., took no part in the decision of this case.

*Hill,* 6 How. (Miss.) 362; 3 Pom. Eq. Jur. 256, note 1; *Simpson* v. *Mundee,* 3 Kan. 172; *Philbrook* v. *Delano,* 29 Me. 410, Shepley, C. J.; *Ahrend* v. *Odiorne,* 118 Mass. 261, Gray, C. J.; *Kauffelt* v. *Bower,* 7 Serg. & R. 64, Gibson, J.; *Wellborn* v. *Bonner,* 9 Ga. 82. Perhaps one of the strongest indorsements of the doctrine is found in *Manly* v. *Slason,* 21 Vt. 271, by Redfield, J., in 1849; but in 1851 it was *utterly wiped out* by the legislature of that state. As to its origin and *rationale,* says Mr. Pomeroy, (3 Eq. Jur. § 1250,) citing many authorities, "there has been a great diversity of opinion. It has been accounted for as a trust, as an equitable mortgage, as arising from a natural equity, and as a contrivance of the chancellors to evade the unjust rule of the early common law by which land was free from the claims of simple contract creditors;" and this author, rejecting all these theories himself, accounts for it as an instance of the "higher importance, consideration, and value given to real than to personal property." And in section 1251 of the same work, it is well said that "no other single topic belonging to the equity jurisprudence has occasioned such a diversity and even discord of opinion among the American courts as this of the grantor's lien. Upon nearly every question that has arisen as to its operation, its waiver or discharge, the parties against whom it avails, and the parties in whose favor it exists, the decisions in different states, and sometimes even in the same state, are directly conflicting. It is practically impossible to formulate any general rule representing the doctrines as established throughout the whole country." See cases cited. See, also, 1 Perry on Trusts, § 234.

We have referred to these matters for the purpose of showing the *standing* of the doctrine of a grantor's lien, and the disposition and tendency of the courts and of legislation towards it, and, contenting ourselves with a reference to the authorities already cited, without here entering into a detailed presentation of them, we feel warranted in saying that this disposition and tendency is at least not to *extend* the doctrine beyond what may be regarded as the comparatively well-settled and established rules of equity in reference to liens of this kind. In other words, the doctrine is not one to be fostered or encouraged, or allowed to spread, but rather to be kept strictly within limits; and this upon the grounds that it is unnecessary for the protection of a

grantor, who may readily, cheaply, and conveniently secure himself by a mortgage which can be put upon record; that the lien is in the nature of a secret and invisible trust, and therefore opposed to the policy and spirit of our registration system; that a sale subject to it is calculated to give a false appearance of credit; and that it is contrary to the spirit and policy of our laws, which favor the free transmission of real estate under such conditions that a purchaser may, with reasonable certainty, *know* what is the precise state of the title which he acquires, and without being subject to the doubt and uncertainty which will be occasioned by such questions as whether there was a grantor's lien, or whether, if there was one, it has been waived or discharged, and whether it has been assigned or not, or whether, if assigned, it still continues,—all questions *dehors* any record. The application of the foregoing considerations which we propose to make in this case will appear hereafter.

We have been unable to find any adjudication in the English courts (where the doctrine of vendor's lien originated) squarely to the effect that a grantor's lien is assignable. The case of *Dryden* v. *Frost*, 3 Mylne & C. 670, cited by counsel and by many text-writers, does not, in our judgment, go to that extent. While there is in this country a diversity of opinion, in most of the states the lien is held to be personal to the grantor, and not assignable; and it would of course follow that in those states the transfer of the debt, either with or without an assignment of the lien, would not pass the lien to the transferee. This result of the authorities in this country may be verified by reference to the cases cited in 3 Pom. Eq. Jur. § 1254, note 3; and see, also, 1 Lead. Cas. Eq. (4th Am. Ed.) 492; Tiedeman, Real Prop. § 294; 2 Sugd. Vend. 398, note by Perkins; Bisp. Eq. § 356; *Philbrook* v. *Delano*, 29 Me. 410; *Ahrend* v. *Odiorne*, 118 Mass. 261; *Simpson* v. *Mundee*, 3 Kan. 172; *Baum* v. *Grigsby*, 21 Cal. 172; *Wellborn* v. *Bonner*, 9 Ga. 82; *Briggs* v. *Hill*, 6 How. (Miss.) 362; 1 Jones, Mortg. § 212.

In this conflict of authority as to the assignability of grantors' liens, we propose, in accordance with the consideration before mentioned, to adopt for this state the rule which is certainly sanctioned by a great, and we think a preponderant, weight of authority, and which com-

mends itself to our judgment as most wholesome, best calculated to promote the general interest, and most in accordance with the spirit and policy of our laws; and this is in the direction of restricting rather than extending the scope of the lien. We therefore hold that a grantor's lien is not generally assignable. We are not, however, to be understood as holding that it may not descend to the grantor's representatives, nor that it may not pass to his assignee for the benefit of creditors, nor that there may not be some other cases in which it may pass to some person who may be regarded as merely representing the grantor and his interest, and not as acting simply for himself.

It may be suggested that the conclusion which we have reached is inconsistent with analogies of the law; but to this it may well be answered that this lien is a mere creature of equity, and therefore entitled to be recognized only as equity has created it and as it is. Aside from this, the considerations before presented distinguish it from such liens as, instead of being disfavored, are favored in law; as, for instance, mechanics' liens. These, being created by statute without restriction as to assignability, must be regarded as favored in law, and therefore entitled to beneficial construction.

This disposes of the case; but we may add that, if there were any doubt about the correctness of our conclusion, it is by no means clear that the acts of plaintiff claimed to amount to a waiver would not lead to the same result.

Order affirmed.