TRI–STATE NATIONAL BANK, a bank in South Dakota, Appellant (Defendant),

Thomas E. Worden, and Carol J. Worden, husband and wife, (Defendants),

v.

Benjamin SAFFREN, Appellee (Plaintiff),

Teri W. Matto (Plaintiff).

No. 86–7.

Supreme Court of Wyoming.

Oct. 23, 1986.

Robert W. Brown (argued), of Lonabaugh & Riggs, Sheridan, for appellant.

William W. Harden (argued), Casper, for appellee.

Before THOMAS, C.J., CARDINE, URBIGKIT and MACY, JJ., and GUTHRIE, J., Retired.

GUTHRIE, Justice, Retired.

This appeal is from a judgment entered by the district court in favor of Benjamin Saffren, appellee, who was granted a judgment in the amount of $74,225.00. The judgment established a vendor's equitable lien on certain properties located within the United States Forest Service area in the Big Horn Mountains, being a vacation cabin, and decreed that the appellee should be allowed to foreclose the lien in this amount.

On July 18, 1980, J. Franklin Reed entered into an "Agreement for Sale of Lease and Improvements" with Thomas E. and Carol J. Worden covering a substantial cabin built upon land owned by the United States and occupied by Reed and his family by virtue of a Forest Service Lease or Permit to occupy the land upon which this cabin had been built. Some three days prior on July 15th, Reed had delivered a warranty deed covering these premises to a friend, Ben Saffren, appellee herein, asking him to hold this deed and deliver it to the Wordens when they had completed all the requirements of the contract for sale. The contract for sale was executed three days later upon July 18, 1980, and at that time Reed as vendor executed and delivered a Warranty Deed and Bill of Sale to the Wordens covering the property in this action.

An examination of the "Agreement for Sale of Lease and Improvements" reveals these pertinent portions, which will be summarized. The total purchase price was $110,000.00 to be paid in enumerated installments leaving a balance of $60,000.00 to be paid in annual installments beginning on July 18, 1981, with interest at 10%. The lease of the land upon which this cabin was situate was to be assigned to the buyers,

and if the lease was not issued in the buyers' names, this agreement was to be void. If buyers sold the property to a third party, the entire balance of the purchase price with interest was to become immediately due and payable. This agreement does not contain any reservation of title or mention of a lien in Reed, as seller, nor does it provide for any other security arrangement.

Prior to his death, Franklin Reed assigned his rights to the proceeds due by virtue of this contract to his mother, Adeline W. Reed, and Ben Saffren. Adeline Reed's interest in the agreement was thereafter assigned to Teri W. Matto who settled this claim after trial by agreement with Tri-State National Bank. After the execution of this contract and the delivery of the deed and bill of sale, the Wordens moved from Sheridan to Belle Fourche, South Dakota, in February of 1981. After this move, they borrowed some $96,000.00 from appellant Tri-State National Bank. On August 10, 1981, the Wordens provided to the bank a statement showing this cabin as an asset and also showing the payment owed his uncle, J. Franklin Reed, as a liability. In February 1982 the Wordens executed to the bank a Security Agreement and Financing Statement covering the property which is the subject of this litigation.

On October 19, 1982, the Wordens entered into an agreement with the bank to cancel their debt to the bank in return for the conveyance or the transfer of the premises in question, which was done. The bank claims by virtue of that transfer that its legal title to the mountain cabin property should be declared to be free of any lien.

Appellees herein commenced this action seeking judgment for the amount remaining due on the purchase price, asking that a vendor's equitable lien against the property be recognized, established, and foreclosed with priority as against the bank. After a trial thereof, the court entered judgment for the remaining balance on the contract, established the equitable lien claimed, and ordered foreclosure against this property to ensure this payment.

We must reverse this holding.

Appellant raises several questions directed at whether such lien could attach to the property herein contending that it was personal property, that the facts herein did not justify the attachment of said lien, and being an equitable remedy against lands owned by the United States and occupied by virtue of a license that this was not such property that could be covered by such a lien. It is further asserted that appellees, as assignees, cannot have or enforce a vendor's equitable lien.

The trial court, after hearing this matter, affixed and attached an implied vendor's lien upon this property, so we will treat this as such property as would be subject to an implied vendor's lien in our disposal hereof and shall not proceed with the questions of the nature of this estate but deal with whether such lien could attach or whether the vendor's lien would be applicable under the factual situation herein. The question whether assignees of a so-called implied vendor's equitable lien can enforce the same as could the original vendor is decisive in our disposal. It is immaterial whether this is such property to which a lien would attach if these plaintiffs as assignees cannot assert such right.

The court in its final judgment set out the following conclusions of law, which directly cover this question, and clearly decide that the appellant as assignee herein could have proceeded to foreclose a vendor's equitable lien as Reed, the original landowner, could have done. They are as follows:

"1. That the property and improvements upon the land consist of chattels, real or fixtures.

"2. That J. Franklin Reed retained a vendor's lien or equitable charge against the property for the unpaid purchase price.

"3. That Plaintiffs' purchase money security interest by assignment from Reed gives them superiority over other claim-

ants except bona fide purchasers for value.

"4. That Plaintiffs have a vendor's lien superior to the bank's rights."

If this lien was not assignable, these conclusions, particularly 3 and 4, are in error, and any judgment against the appellant cannot be sustained. An assignment of a vendor's equitable lien recognizes an assignment of an unwritten agreement being an equitable inchoate right, uncertain in its terms, and not based upon any agreement between the original parties. It appears upon its face to be a rather unusual thing, being a lien, which does not exist until it is attached as a result of the application by an equity court of equitable principles to determine that such lien should be attached.

The parties herein have agreed that the case of *Waechter v. Wilde*, 47 Wyo. 363, 38 P.2d 321 (1934),[1] recognized and brought into our law an implied vendor's equitable lien upon real estate in favor of the vendor, thus we are able to and must proceed directly to the matter of the rights of the assignees of the original vendor.

■ We are compelled to a most-careful examination and analysis of the Waechter v. Wilde case, supra, to determine, if possible, just what is the nature of the vendor's equitable lien which was contemplated and which was brought into our law as a result of that decision. This so-called lien is an equitable device, not dependent on contract or agreement of the parties, and is not similar to other liens not being:

"* * * a specific, or absolute charge upon the property, but rather a simple right to resort to the same upon failure of payment by the vendee. * * *" *Waechter v. Wilde*, supra, 38 P.2d at 322. This would, in effect, appear to be more of an aid to execution or collection of the remainder of the purchase price of the land by granting a right to proceed against the particular land and to justify this by saying the court has established a lien, which exists after it has been judicially declared or attached.

Careful reading of the Waechter case clearly sets out the nature of the right, which the court was then recognizing and bringing into our jurisdiction. It is, also, quite persuasive that the recognized right was confined to the original vendor and vendee, i.e., a right which was purely personal to and vested only in the vendor. A reading of that case clearly demonstrates that the writer of that opinion viewed and recognized the vendor's equitable lien only as a personal privilege applicable to vendor and vendee. The words in this opinion are rather persuasive as set out below. It is altogether possible that the justice writing that opinion anticipated some of the difficulties which might result from honoring such assignments and wished to confine its application.

The language of Lord Eldon, which is quoted in the Waechter case with approval, is as follows:

"'It goes upon this; that a person, having got the estate of another, shall not, *as between them,* keep it, and not pay the consideration.'" (Emphasis added.) 38 P.2d at 322.

Continuing in the *Waechter v. Wilde* case, which cited with approval from the case of *Chilton v. Lyons*, 67 U.S. 458, 2

1. This case which was decided in 1934 may well be considered an anomaly. The writer can find no case in this jurisdiction or in any other jurisdiction which either cites or relies upon this case for any legal point. It may be that inferentially such a lien has become unnecessary in the present conditions with the existence, recognition, and employment of many arrangements to give vendors security and not allow possible concealed or unrecorded claims against real estate. One who explores the field of vendor's equitable liens will discover much confusion and conflict, as has been noted:

"No other single topic belonging to the equity jurisprudence has occasioned such a diversity and even discord of opinion among the American courts as this of the grantor's lien. Upon nearly every question that has arisen as to its operation, its waiver or discharge, the parties against whom it avails, and the parties in whose favor it exists, the decisions in different states, and sometimes even in the same state, are directly conflicting. * * *" 4 Pomeroy's Equity Jurisprudence, § 1251, p. 743 (5th ed. 1941).

Black, 17 L.Ed. 304 (1863), appears the following language:

> " 'When one person has got the estate of another, he ought not, in conscience, to be allowed to keep it without paying the consideration. It is on this principle that Courts of Equity *proceed as between vendor and vendee.* * * *' " (Emphasis added.) 38 P.2d at 323–324.

Justice Riner, writer of the Waechter opinion, reiterated and recognized this right and made it applicable to the parties, i.e., as a personal right, when he said:

> "There is no provision in the statutes of this state, to which our attention has been called, which in terms interferes with the operation of so beneficient a principle *between the vendor and the vendee themselves.* * * *" (Emphasis added.) Id. 38 P.2d at 324.

It is hard to conceive of an opinion which more clearly states that the principle is adopted only as applicable between the vendor and vendee, i.e., the parties, and that it was a personal right inuring to the vendor.

In its appeal, appellant poses the question directly of possible assignability of this lien and whether it would follow assignment of the debt, as follows:

> "5. If an implied vendor's lien could have been imposed on the property, may such a lien be assigned?"

In seeking an answer to this query, it is revealed that there are divergent views on this matter, but it appears that the view that such lien is not assignable is most prevalent in this country. This condition is well illustrated by these quotations which appear in texts:

> "In the majority of the states, however, in which the lien is recognized, it is regarded as personal to the vendor, and not capable of transfer." Tiffany, 5 Real Property, § 1569, p. 678 (3d ed. 1939) "Whether the vendor's lien is assignable with the debt which it secures is a question upon which the authorities are not agreed. Generally, in the United States, the lien is considered personal to the vendor, and not assignable except under peculiarly equitable circumstances."

(Footnotes omitted.) 10A Thompson on Real Property, § 5261, p. 545 (1957 Replacement, John S. Grimes).

For further citations expressing this view, see 92 C.J.S., Vendors and Purchasers, § 390, p. 330, and 77 A.J.S., § 448, pp. 578–579, which state substantially the same thing.

It is of interest that II Warvelle on Vendors, Second Edition, several times cited and relied upon in the Waechter case, cites this rule, as follows:

> "The great preponderance of authority, however, maintains the contrary, and announces the rule that the lien which arises by implication of law in favor of the vendor is personal in its nature, and not assignable or transmissible, even by express language; that it is not only personal to the vendor, but can be enforced only by him and for his own benefit." II Warvelle on Vendors, § 697, pp. 825–826 (2d ed. 1902).

This writer does infer that the justice writing the Waechter opinion being familiar with the subject and the text of Warvelle, in the area of these liens, thought it was wise to emphasize the personal nature of the lien and did so for that reason by reiterating that it was personal. This certainly brought it clearly within the rules before cited.

Because the appellate court in the following cited case was faced with the same situation that we face, its jurisdiction having theretofore approved and recognized the existence of the vendor's equitable lien and in a case involving the validity of an assignment, we think the case of *Hammond v. Peyton,* 34 Minn. 529, 27 N.W. 72 (1886), is particularly applicable. The court said:

> "We have referred to these matters for the purpose of showing the *standing* of the doctrine of a grantor's lien, and the disposition and tendency of the courts and of legislation towards it, and contenting ourselves with a reference to the authorities already cited, without here entering into a detailed presentation of

them, we feel warranted in saying that this disposition and tendency is at least not to *extend* the doctrine beyond what may be regarded as the comparatively well-settled and established rules of equity in reference to liens of this kind. In other words, the doctrine is not one to be fostered or encouraged, or allowed to spread, but rather to be kept strictly within limits; and this upon the grounds that it is unnecessary for the protection of a grantor, who may readily, cheaply, and conveniently secure himself by a mortgage which can be put upon record; that the lien is in the nature of a secret and invisible trust, and therefore opposed to the policy and spirit of our registration system; that a sale subject to it is calculated to give a false appearance of credit; and that it is contrary to the spirit and policy of our laws, which favor the free transmission of real estate under such conditions that a purchaser may, with reasonable certainty, *know* what is the precise state of the title which he acquires, and without being subject to the doubt and uncertainty which will be occasioned by such questions as whether there was a grantor's lien, or whether, if there was one, it has been waived or discharged, and whether it has been assigned or not, or whether, if assigned, it still continues,—all questions *dehors* any record.

"The application of the foregoing considerations which we propose to make in this case will appear hereafter. We have been unable to find any adjudication in the English courts (where the doctrine of vendor's lien originated) squarely to the effect that a grantor's lien is assignable. The case of *Dryden v. Frost*, 3 Mylne & C. 670, cited by counsel and by many text writers, does not, in our judgment, got to that extent. While there is in this country a diversity of opinion, in most of the states the lien is held to be personal to the grantor, and not assignable, and it would of course follow that in those states the transfer to the debt, either with or without an assignment of the lien, would not pass the lien to the trans-

feree. This result of the authorities in this country may be verified by reference to the cases cited in 3 Pom.Eq.Jur. § 1254, note; and see, also, 1 Lead. Cas.Eq. (4th Am.Ed.) 492; Tiedm.Real. Prop. § 294; 2 Sugd.Vend. 398, note by Perkins; Bisp.Eq. § 356; *Philbrook v. Delano*, 29 Me. 410; *Ahrend v. Odiorne*, 118 Mass. 261; *Simpson v. Mundee*, 3 Kan. 172; *Baum v. Grigsby*, 21 Cal. 173; *Wellborn v. Bonner*, 9 Ga. 82; *Briggs v. Hill*, 6 How. (Miss.) 362; 1 Jones, Mortg. § 212." (Italics in original.) 27 N.W. at 73.

We find these words most persuasive and applicable to our present-day modern society. Vendors almost universally protect their own lien by the delivery of a deed and the redelivery of a mortgage, by a contract of sale providing for delivery of a deed upon payment of the agreed price or by an escrow device which provides for the delivery of the title instruments, if and when the amount due thereon be paid. This leaves a record nice, clear, and clean without any overhanging shadow of a so-called vendor's lien, which is not only not recorded but exists only in the mind of the equity court. It would, also, appear that an inference is possible that the widespread fact that this lien has been completely ignored, not only in this jurisdiction but in other jurisdictions, is a recognition of the fact that modern-day conveyance practices makes it belong in another age. It might appear arguably that the recognition of such rights in a vendor and his total failure to take any steps to protect himself is an absolution from negligence, not an equitable remedy to which he is entitled, particularly because of the possibility of setting in motion such a controversy as has arisen in this case.

Other courts have recognized and applied the rule that such a lien is personal and not one which can be assigned, in the following cases: *Alabama-Florida Co. v. Mays*, 111 Fla. 100, 149 So. 61, 91 A.L.R. 139 (1933), adopts and discusses this rule. This rule was reiterated by the same court in *Hedlund v. Jones*, Fla.App., 114 So.2d 220

(1959), and *White v. White*, Fla.App., 129 So.2d 148 (1961); *Powers v. Johnson*, 71 F.2d 48 (8th Cir.1934), cert. den. 293 U.S. 596, 55 S.Ct. 111, 79 L.Ed. 689 (1934); *Perry Coal Co. v. Richmond*, 287 Ill.App. 298, 4 N.E.2d 891 (1936).

This being viewed solely as an equitable remedy, this writer has trouble finding the overriding equities which would rest in Benjamin Saffren, appellee herein, an assignee who received the assignment for nominal or no consideration, as against the Tri-State National Bank, appellant, who has parted with a substantial consideration. That it must give way to the preference established as a result of the operation of and the attachment of the lien does not appear to serve equity in this case.

It might appear that Reed, as vendor, did not intend to claim any lien for his protection, because he earlier, prior to the time of the execution of the contract, delivered the deed to Saffren to hold until the payments were made, and yet three days later executed this contract of sale and deed and delivered them, with no reservation, to Wordens. An argument certainly can be made that he had decided to forego this right.

It has not been directly raised, but this writer has some curiosity as to the notice which the appellant is presumed to have received. An unconditional warranty deed recorded which definitely conveys title without reservation of lien of any kind or character might raise the inference in a great many people's minds that there was no intention to reserve this lien or any conditional lien.

■ Because, as an assignee, appellee had no right to assert a vendor's equitable lien against the properties, this judgment is reversed and remanded with instructions to remove the lien against these premises and to find that appellant's interest in this property is not subject to any claim of the appellee, Saffren.

Reversed and remanded with instructions.

CARDINE, J., filed a dissenting opinion.

CARDINE, Justice, dissenting.

I would affirm the decision of the trial judge. The court was here sitting as a court in equity. The critical question presented for determination is: what are the equities between the parties, i.e. should the bank have the benefit of the unpaid balance on the Reed family property or should that benefit go to the Reed family or their designees? Let us examine the equities.

This vacation home on a forest service lease had been in the Reed family since the 1930s. J. Franklin Reed sold the home to Tom Worden. There was a principal balance of $50,000 still due upon the purchase. Before his death, J. Franklin Reed assigned his right to the balance of the purchase price to Ben Saffren and his mother, Adeline Reed. The parties stipulated at trial that the balance of the purchase price was owed to Saffren and Mrs. Reed.

For the bank, it is undisputed that it extended loans to Worden without relying upon or even knowing about the Reed cabin; that upon learning about Worden's purchase of the cabin, the bank obtained a transfer of Worden's "right, title and interest" in payment of his preexisting debt to the bank. Worden took bankruptcy. The court found:

"That the Defendant Tri-State National Bank had actual, as well as constructive, knowledge of Plaintiffs or their predecessors' interest in said property, to wit: that Wordens still owed money on their agreement for sale.

"That Defendant Bank had actual knowledge through the so called Loan Agreement that all that the bank was purchasing from Wordens was whatever interest Wordens had.

"That Defendant Bank is not a bona fide purchaser for value."

The findings of the court are amply supported by the evidence. The equities weigh

heavily in favor of the Reed family and their designees. The court's opinion quotes 10A Thompson on Real Property § 5261 (1957) at p. 545:

> "Generally, in the United States, the lien is considered personal to the vendor, and not assignable *except under peculiarly equitable circumstances.*" (Emphasis added.)

I would find the circumstances in this case to be "peculiarly equitable" and recognize the assignment of the equitable lien. This lien did not exist only in the mind of the equity court. The bank knew of the unpaid purchase price, as did all parties. The bank was not a bona fide purchaser nor did it rely upon a record examination for clear title. Therefore, I would affirm the trial court.